When the original has not been in possession of the party offering the copy, the proof of loss which will authorize the introduction of the latter as evidence, must depend on the particular circumstances of the case.

The law presumes the husband the father of the children born during marriage.

## TATE vs. PENNE.

Appeal from the court of the eighth district, the judge of the third presiding.

PORTER, J. delivered the opinion of the court This is an action by a mother against her daughter. The petitioner claims a slave and five children, which she alleges she purchased in the year 1812, and possessed them for a long time after: that the defendant has taken them into possession and refuses to deliver them up.

The defendant pleads the general issue; avers that she has a good title to the property sued for, that the slaves were purchased in

trust for her; and finally that she has held them five years previous to the institution of this suit, in virtue of a just title, and with good faith.

The cause was submitted to a jury in the court of the first instance, who found for the defendant; judgment of non-suit was rendered against the plaintiff, after overruling a motion for a new trial, and she appealed.

The plaintiff appears to have been married three times. After living one or two years with her first husband, Sims, a voluntary separation took place between them, and he removed from that part of the country in which they had resided. Subsequent to this removal the defendant was born, the alleged fruit of an illegitimate connexion of the plaintiff with one Laurens. They lived together and cohabited until ten years had elapsed from the time Sims was heard of, when they were married. This marriage was preceded by a contract, in which among many other stipulations, it is stated, that the slaves which form the object of this suit should be secured to the petitioner; after which follows that clause in the contract under which the defendant sets up title to them.

Eastern Dist
*March,* 1829.

TATE
*vs.*
PENNE.

In case of voluntary separation access is always presumed unless cohabitation has been physically impossible.

The condition of a child born during marriage can not be affected by the declaration of one or both the spouses.

Eastern Dist. "which said mulattress named Sally, with her
*March*, 1829. three children and their issue, the said parties
TATE      agree respectively to secure to their natural
*vs.*
PENNE.   daughter, named Delphine, her heirs and as-
signs forever." This contract was dated in
1816. In 1825 the defendant intermarried
with A. Penne, and the slaves were sent or
permitted to be removed to the house of the
plaintiff.

On the trial below an objection was made to
reading in evidence the copy offered of the
contract of marriage, in which the clause just
set out is found. It appears from testimony
taken on this objection, that a very irregular
practice has prevailed in the parish of St. Tam-
many of recording all original acts in a book
of record, and after recording them to hand
back the originals to the parties. The witnesses
mentioned in the copy were called into court,
and they deposed, that they had attested a con-
tract of marriage between the plaintiff and
Laurens which was passed, or acknowledged
before the parish judge. Notice was given to
the plaintiff to produce the instrument. The
defendant's husband swore that the contract
was not in his possession nor in that of his

wife; that he did not know where it was---that
it was not in any of the public offices of the
parish, and that he believed it lost. That he
had been diligently searching for it for a year
back, but without success. The parish judge
testified it was not in his office, and had not
been there since he took possession of it. One
of the heirs of Laurens swore it was not in his,
nor did he ever see it in the hands of any of
the family. The person who recorded it in
the notarial record deposed that the copy pro-
duced in court was a correct copy.

We think that under the circumstances of
the case the court below did not err in admit-
ting the copy in evidence. The book, in which
the original had been recorded being produced
in court, it was not the copy of a copy, but the
copy of the original that was offered. The
instrument never had been in possession of
the defendant. She appears to have taken all
means in her power to procure it. The proof
of loss which will authorise the introduction
of inferior evidence must depend on the partic-
ular circumstance of each case.

The next question is in relation to the va-
lidity of the act. The appellant contends that

TATE
*vs.*
PENNE.

it is an instrument *sous seinq privé*, and as such could not be the evidence of a matrimonial agreement. The commencement of the act does not state, as is usually the case, that the parties came before the judge or notary.--- It begins with these words "articles of agreement made and concluded, &c." and it terminates by declaring, that the parties affixed their names to it in the presence of the subscribing witness. After, and immediately following which declaration, are in these words: "done and executed before me, the date above written, James Tate, parish judge."

The only objection which we conceive can be fairly made to this not being a public act, is the deviation from the ordinary form of commencing instruments of that description. But this objection is removed by the conclusion, in which it is stated the act was made and executed before the parish judge. This declaration at the close of the instrument is entitled to as much weight, and furnishes as strong evidence of its being executed before the notary, as if the same allegations were contained in several other parts of it.

But the allegations of the plaintiff go farther

than the form in which the act was cloathed.
She contends that the stipulations in it, in favor of the defendant, were null and void.

If the defendant was capable of taking from the parties, we see nothing illegal in that clause of the marriage contract by which the slaves in question were secured to the defendant. The title, it is true, was in the mother, but the father, as he styles himself, also settled property at the same time on the defendant, and he gave to the plaintiff by the contract, $1500 if she survived him.

The plaintiff, however, has resorted to a most extraordinary ground for annulling this conveyance to her child. She insists that her first husband Sims being alive at the time of the birth of the defendant, the latter was an adulterous bastard, and incapable of taking from her by donation---that the agreement disturbed the legal order of succession.

We are satisfied this ground for annulling the contract cannot avail the plaintiff: for, admitting she was legally married to Sims at the time defendant was born, the consequence would be that the defendant would be the daughter of Sims, not of Laurens, and as such

Eastern Dist
*March* 1829.

TATE
*vs.*
PENNE.

did not lie under any incapacity to receive a donation from the parties to the contract. The law (said our code at the time of the birth of the defendant) considers the husband of the mother as the father of all the children conceived during marriage. In case of voluntary separation, access is always presumed unless the contrary be proved: the presumption of paternity is at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible. *C. Code, p.* 45, *art.* 7, 10 & 11.

The evidence establishes the marriage of the parties in 1806. The defendant was born in 1809. *Cooper* swears they lived together a year and then parted. *Lanier* testifies, he has not seen *Sims* since a year after his marriage. *Edwards* states he saw him in 1808 in New-Orleans, and never saw him on the east side of the lake since he went over there.— *Woods* swears they separated in 1807, that he saw Sims for a week after and never saw him since. Lanier says the plaintiff was in New-Orleans in 1807.

This is all the evidence. It creates a presumption of absence and non access: but that

will not do in cases like this.    The legal pre-

Eastern Dist
*March* 1829,

TATE
*vs.*
PENNE.

sumption of the husband being the father, and
of access being presumed in cases of voluntary
separation, can only be destroyed by evidence
bringing the parties within the exception the
law has created to the rule, namely the *physi-
cal* impossibility of connexion—*moral* will
not do.

Now that physical impossibility can only be
shewn, by proving the residence of the hus-
band and wife to be so remote from each oth-
er that access was impossible. The proof here
wholly fails in establishing it. The evidence
of the husband's residence is only negative.
He was not on the east side of the lake. Where
the wife was, the proof is silent. How can we
tell from the evidence that they did not meet
and cohabit.

We have left out of view in coming to this
conclusion the fact of the mother and Laurens
having declared the defendant to be their child,
and of their having treated her as such. It
being a perfectly well established principle in
cases of this kind, that a child born during mar-
riage cannot have its condition affected by the
declaration of one or both of the spouses.—
*Toullier, vol.* 2, *lib.* 1, *chap.* 2, *no.* 859.

We conclude therefore that the mother has failed to establish that her child was an adulterous bastard, and as such incapable of receiving the donation given to her by the marriage contract. Even if she had, we have strong doubts whether such a plea could be received from her, but we do not find it necessary to decide the question.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Waggaman* for plaintiff—*Hennen* for defendant.