62 So.2d 119

FEAZEL v. FEAZEL et al.

No. 39420.

Nov. 10, 1952.

Raymond E. Shuler, Shreveport, for plaintiff-appellant.

Robert P. Hunter, Shreveport, curator-ad-hoc, Charles M. Peters, Shreveport, tutor-ad-hoc, for defendant-appellee.

HAWTHORNE, Justice.

Plaintiff, Maurice Felton Feazel, has appealed from a judgment of the district court rejecting his demands for a divorce on the ground of adultery and for disavowal of the paternity of a child born during the existence of his marriage with the defendant, Bertha Aline Feazel.

This action was brought against plaintiff's wife as an absentee, and a curator ad hoc was appointed to represent her, and likewise a tutor ad hoc was appointed to represent the minor child, Pamela Marie Feazel.

Seeking to confirm a default previously entered, plaintiff adduced evidence to establish that he and the defendant were married in Shreveport on August 17, 1947, and resided together at their matrimonial domicile in Shreveport for a period of

seven days, after which they separated, defendant returning to the home of her mother in Shreveport and plaintiff returning to the home of his family in the same city; that on December 5, 1947, his wife committed adultery in a hotel room in Shreveport with a man whose name was unknown to him; that about the middle of August, 1948, he was informed that his wife had left Shreveport in March of that year and gone to Salina, Kansas, and that she had there given birth to a child on August 5, 1948. To prove the birth of this child plaintiff offered in evidence a birth certificate, issued by the State Board of Health, Department of Vital Statistics, for the State of Kansas. According to his testimony, his wife concealed her pregnancy from him, and he never had sexual relations at any time with the defendant because during the entire period of time they lived together she was menstruating, and after their separation they lived separate and apart. He also testified that he had no knowledge of the birth of the child until the middle of August, 1948.

Plaintiff contends that he should be permitted to disavow the paternity of the child under the provisions of Articles 185 and 189 of the LSA–Civil Code. These articles provide:

"Art. 185. The husband can not by alleging his natural impotence, disown the child; he can not disown it even for cause of adultery, unless its birth has been concealed from him, in which

case he will be permitted to prove that he is not its father."

"Art. 189. The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."

■ Under Article 184 of the LSA-Civil Code, the law considers the husband of the mother as the father of all children conceived during the marriage, and it has been said in the jurisprudence of this court that the presumption created by this article is the strongest presumption known in law. In Dejol v. Johnson, Administrator, 12 La.Ann. 853, it was said that this legal presumption "can only be rebutted in the mode and within the time prescribed by law. 'The right to disavow and repudiate a child born under protection of the legal presumption is peculiar to the father and can be exercised only by him, or his heirs, within a given time, and in certain cases. * * *'" The strength of this presumption was recognized by the court in the cited case by quoting with approval from Tate v. Penne, 7 Mart.(N.S.) 548, that "'a child born during marriage cannot have its condition affected by the declaration of one or both of the spouses'".

According to Article 189, this presumption may be rebutted when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible.

In Tate v. Penne, supra, this court said:

"* * * The legal presumption of the husband being the father, and of access being presumed in cases of voluntary separation, can only be destroyed by evidence bringing the parties within the exception the law has created to the rule, namely the *physical* impossibility of connexion—*moral* will not do.

"Now that physical impossibility can only be shewn, by proving the residence of the husband and wife to be so remote from each other that access was impossible. * * *"

In Succession of Barth, 178 La. 847, 152 So. 543, 545, 91 A.L.R. 408, it was stated:

"* * * The Civil Code (in article 184) declares that the law considers the husband of the mother as the father of her children conceived during the marriage. In article 186 it is declared that a child born before the 180th day after the marriage, and capable of living, is not presumed to be the child of the mother's husband; which is the same as to say that the child was conceived before the marriage. But, in Harrington v. Barfield, 30 La.Ann. 1297, article 186 of the Civil Code was construed to mean that the converse of the proposition also is true, viz.: 'The child born after one hundred and eighty days after marriage is presumed to be the husband's child.' *This presumption, according to article 189 of*

*the Civil Code, cannot be overcome except by the proof that the husband was so far away from the wife, when the child was conceived, that cohabitation was 'physically impossible';* and such proof is admissible only in the cases where, according to articles 190 to 192, the husband may disavow the paternity of his wife's child. *In such cases, in order to overcome the presumption of paternity, the proof must be, literally, that cohabitation between the husband and wife was, as the Code says, 'physically impossible.' * * "* (Italics ours.)

■ Plaintiff resided with defendant for a period of seven days after the marriage, and both lived in the same city, Shreveport, for several months after their separation, that is, until the middle of March, 1948. The child was born on August 5, 1948. Under these circumstances he has not shown or proved that cohabitation was physically impossible, or that their residences were so remote from each other that access was impossible. Plaintiff has therefore not overcome the presumption of paternity in the manner provided by Article 189 of the LSA–Civil Code.

The next question presented is whether the father in the instant case has overcome the strong presumption of paternity in the mode provided by Article 185 of the LSA–Civil Code; that is: Has he established, first, the adultery, and, second, that the birth of the child was concealed from

him? If he has failed in either respect, his suit must fall.

According to Baudry-Lacantinerie, Traité de Droit Civil (3e éd. 1907), nos. 489, 490, pp. 412 et seq., in such a case the adultery of which the husband makes proof must coincide with, or be at about the time of, the conception of the child; for certainly an act of adultery would not be a cause for disavowal if it were committed at a time far removed from that of the conception, though the time of the adultery need not coincide exactly with that of the conception. According to this same author, it is also necessary in order that the disavowal be possible that the wife should have concealed the birth of the child, and, as for knowing what are circumstances from which results a concealment, that is but a *question of fact,* to be decided by the judge in case of contestation. The decisions of the courts, says Baudry-Lacantinerie, give a great number of examples of facts which constitute concealment of the birth of the child. One of the most significant is the registry of the child either as born of unknown father and mother, or under assumed names, or as a natural child, or as belonging to a father other than the husband. To constitute concealment as contemplated by the law, such declarations must have been made with the knowledge of the mother.

■ In the instant case, therefore, has it been proved that the wife as a matter of

fact (it being a question of fact) concealed the birth of the child from the plaintiff?

According to the testimony taken on plaintiff's effort to confirm the default, his wife left Shreveport about the middle of March. However, there is not one scintilla of evidence in the record as to why she left Shreveport or to show that she left for the purpose of concealing her pregnancy or to conceal the birth of the child. On the contrary, at the time this case was tried in November of 1948, three months or so after the birth of the child, she was still residing in Salina, Kansas, where the child was born. The child, according to the birth certificate introduced in evidence by the plaintiff, was born at a hospital in Salina, Kansas, and the information therein was given by the mother, Mrs. Feazel. In this birth certificate it is stated that the child is legitimate and that the father is Maurice F. Feazel, aged 31, a resident of Shreveport, Louisiana, whose occupation is that of a sheet metal worker; that the mother resides at 2705 Emery Street, Shreveport, Caddo Parish, Louisiana; that the child's name is Pamela Marie Feazel; that the mother's mailing address for registration notice is "Mrs. Aline Feazel, 2705 Emery, Shreveport, La."

If there were the slightest evidence of concealment shown by the record, it could be only the fact that the wife gave birth to the child in Kansas; for, as pointed out, there is no evidence whatsoever, and no attempt is made by plaintiff to prove, that

she left Shreveport because of her pregnant condition, or that she attempted to conceal the birth of the child or the identity of its parents. On the contrary, the birth certificate itself refutes any concealment, for in this document she named the husband as the father, gave his address, age, and occupation, and gave her own name and address. Under these circumstances the husband has not proved that she attempted to hide or secrete the birth of the child from him. In fact, when he wanted to make proof of the child's birth, he had no trouble in obtaining the birth certificate which he filed in evidence.

Plaintiff obtained a commission to take the testimony of his wife, the defendant, before a notary public in the State of Kansas. According to the answers to interrogatories propounded to her by plaintiff, to which no cross-interrogatories were made by her curator or the child's tutor, she and the plaintiff never at any time before or during the marriage had sexual relations with each other; she gave birth to a daughter, Pamela Marie Feazel, in Salina, Kansas, in August of 1948, and plaintiff was not the father of this child. From this testimony it will be seen that, notwithstanding the birth certificate which had been made on information furnished by this defendant, and in which she stated that the child was legitimate and that the child's father was the plaintiff, she is by her answers to the interrogatories bastardizing her child. The question is: Does the law permit her testimony to have such effect?

In Tate v. Penne, supra, the well established principle was recognized that " * * * a child born during marriage cannot have its condition affected by the declaration of one or both of the spouses". In Succession of Saloy, 44 La.Ann. 433, 10 So. 872, 876, it was said:

"The sanctity with which the law surrounds marital relations and the reputation and good fame of the spouse and of the children born during their marriage is of such inviolability that the mother and the children can never brand themselves with declarations of adultery, illegitimacy, and bastardy, and their character is not permitted lightly to be thus aspersed, however true in themselves the stern and odious facts may unfortunately be. This doctrine has long ago been recognized in this state."

This court in the recent case of Smith v. Smith, 214 La. 881, 39 So.2d 162, held that the wife had no right to contest her husband's paternity of a child born during the marriage, and cited numerous authorities in support of its holding.

Under the above cited authorities, we must disregard the mother's testimony which would have the effect of making her child illegitimate, and it cannot overcome the legal presumption that the husband of the mother is the father of the children born during the marriage, as provided in Article 184 of the LSA–Civil Code.

We therefore conclude that appellant has not overcome the presumption of paternity in the mode prescribed by Article 185 of the LSA–Civil Code, in that he has not established and proved to our satisfaction that the birth of the child was concealed from him.

Furthermore, plaintiff-appellant did not prove the act of adultery to the satisfaction of the trial judge, for otherwise the judge would have granted plaintiff a divorce.

The taking of testimony in support of the allegations of plaintiff's petition was begun on November 10, 1948, and, since he failed to adduce any evidence of adultery, the case was continued for further testimony to March 2, 1949. At that time plaintiff called only one witness, a young woman, who testified that she was a friend of Mrs. Feazel; that she had sometimes stayed with Mrs. Feazel in a hotel in Shreveport; that on December 5, 1947, she had occasion to go to Mrs. Feazel's room in this hotel and entered by the door, which was unlocked; that she saw Mrs. Feazel and a man on the bed, undressed and in a very warm embrace; that she thereupon excused herself, left the room, and "went out and had a cocktail".

The trial judge may have attached some significance, as we do, to the coincidence that the witness fixed with certainty the occurrence of the alleged adulterous act on a date *exactly* eight months prior to the birth of the child, and the duration of the pregnancy was eight months according to

the birth certificate. The scene described by the witness is one usually enacted behind locked doors, and the trial judge may have considered questionable the witness's testimony that she found the door unlocked. The witness did not testify whether she knew the man or whether she had ever seen him before or since, but she was not cross-examined on any of her testimony. The trial judge, who observed and heard the witness testify, did not believe her testimony, and we cannot say that he erred in this respect.

If this witness's testimony is disregarded, the only testimony left to establish the defendant's adultery is that of the defendant herself in her answers to the interrogatories propounded to her by counsel for plaintiff. Her answers to the interrogatories, the substance of which we have previously given, do not fix the time, place, date or person with whom any adulterous act was committed, but reveal only that she never had sexual relations with her husband, and that a child was born to her. If these statements can be deemed an admission or confession of adultery on her part, they are not sufficient, standing alone, to award to plaintiff a divorce on the ground of adultery. It has been held in such a suit that " * * 'the law requires more than a *simple confession* of one of the parties to dissolve the bonds of matrimony between them. *Facts* must be shown, and *such facts* as will authorize a court of justice to de-

clare that the interference of the law is absolutely necessary.' Harmon v. McLeland, 16 La. 27. Courts may, without impropriety, entertain such proof, in corroboration of *other proven facts,* from which adultery may be inferred; but not as substantive evidence." Mack v. Handy, 39 La.Ann. 491, 2 So. 181, 182. Since the plaintiff has not proved the adultery at the time, place, and date as alleged, the testimony of the wife cannot be accepted as corroboration of the alleged act of adultery.

For the reasons assigned, the judgment appealed from is affirmed; appellant to pay all costs.