142 So.2d 571 (1962)
John TRAHAN, Plaintiff and Appellant,
Louella Trahan TRAHAN and Priscilla Ann Trahan, Defendants and Appellees.
No. 585.
Court of Appeal of Louisiana, Third Circuit.
June 13, 1962.
Rehearing Denied July 5, 1962.
*572 Pugh, Buatt & Pugh, by Lawrence G. Pugh, Jr., Crowley, for plaintiff-appellant.
Edwards & Edwards, by Nolan J. Edwards, Crowley, Noble M. Chambers, Crowley, for defendants-appellees.
Before FRUGE, TATE and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit by John Trahan to disavow the paternity of the child, Priscilla Ann Trahan, born to plaintiff's wife, Louella Trahan Trahan. The instant case has been consolidated with Appeal No. 586 entitled Trahan v. Trahan, La.App., 142 So.2d 577, which is a suit for separation from bed and board on the grounds of living separate and apart for a period of more than one year, and with Appeal No. 587 entitled Trahan v. Trahan, La.App., 142 So.2d 577, which is a suit for divorce on the grounds of adultery. The three cases were consolidated for purposes of trial in the lower court where judgment was rendered in favor of plaintiff in the separation suit, but adverse to plaintiff in the disavowal suit and the divorce suit. Plaintiff has appealed in all three cases, with the explanation that the only reason he has appealed in the separation suit is because of its close connection with the other two related cases. Defendants have not answered the appeal.
The evidence shows that the plaintiff and the defendant, Louella Trahan Trahan, were married on September 17, 1955, and lived together in Rayne, Louisiana, for a period of about five years during which time twin boys were born of said marriage. Plaintiff and said defendant voluntarily separated on May 22, 1960. Defendant retained custody of the twins and remained in Rayne at the home of her mother. Plaintiff went to Crowley, where he lived for *573 about a month, and then moved to his father's home near Morse, about fourteen miles distant from Rayne, where plaintiff was living at the time of the trial of the instant case. He voluntarily paid to the defendant, for the support of the twins, the sum of $80 per month, which payments were made semi-monthly by plaintiff delivering the money personally to the defendant at her mother's home in Rayne.
On November 18, 1961, which was approximately eighteen months after said voluntary separation, Louella Trahan Trahan gave birth to a child, Priscilla Ann Trahan, at a hospital in Rayne, Louisiana. The birth certificate signed by defendant stated that the father was "unknown". As far as the evidence shows, the defendant had actually told no one of her pregnancy, except her doctor. Although the defendant is a large woman weighing 156 pounds before the pregnancy, and gained only seven pounds during the pregnancy, it became apparent to defendant's mother, three or four months before the birth, that defendant was pregnant. Nevertheless, defendant denied the fact of her pregnancy to her mother until the birth of the child. The evidence also shows that the foreman, under whom defendant worked at Glady Printing Company, heard rumors of defendant's condition and also observed that she was pregnant, but nevertheless defendant denied to her employer that she was pregnant and actually kept on working until the day before the birth. The plaintiff, John Trahan, testified that although he heard rumors of defendant's pregnancy and on his semi-monthly visits observed that she looked "kind of huge" he wasn't sure whether she was pregnant and didn't ask her so she didn't tell him one way or the other.
Defendant testified that since the date of the voluntary separation she had not "lived together as man and wife" with plaintiff nor had she ever been "alone" with him. Plaintiff testified that since said separation he had not cohabited with defendant and that he was not the child's father. The parents of both plaintiff and defendant corroborated their having lived separate and apart and testified that as far as they knew, plaintiff and defendant had not been alone together.
Under the above facts plaintiff admits at the outset that he is not entitled to a judgment of disavowal under the provisions of LSA-C.C. Art. 189, because there was no such remoteness that cohabitation between plaintiff and defendant was "physically impossible". It is the plaintiff's contention that the instant suit, which was timely filed within one month after the birth of the child as required by LSA-C.C. Art. 191, is controlled by the provisions of LSA-C.C. Art. 185, which reads as follows:
"The husband cannot by alleging his natural impotence, disown the child; he cannot disown it even for cause of adultery, unless its birth has been concealed from him, in which case he will be permitted to prove that he is not its father."
LSA-C.C. Art. 185 has been interpreted by our Supreme Court in Feazel v. Feazel, 222 La. 113, 62 So.2d 119 where, in a very similar factual situation, the court first pointed out that under LSA-C.C. Art. 184 the law considers the husband of the mother as the father of all children conceived during the marriage and that this is one of the strongest presumptions known in our law. The court pointed out that this presumption can only be rebutted in the mode and within the time prescribed by LSA-C.C. Articles 185-192. Interpreting LSA-C.C. Art. 185 the court held as follows:
"The next question presented is whether the father in the instant case has overcome the strong presumption of paternity in the mode provided by Article 185 of the LSA-Civil Code; that is: Has he established, first, the adultery, and, second, that the birth of *574 the child was concealed from him? If he has failed in either respect, his suit must fall.
"According to Baudry-Lacantinerie Traite de Droit Civil (3e éd. 1907) nos. 489, 490, pp. 412 et seq., in such a case the adultery of which the husband makes proof must coincide with, or be at about the time of, the conception of the child; for certainly an act of adultery would not be a cause for disavowal if it were committed at a time far removed from that of the conception, though the time of the adultery need not coincide exactly with that of the conception. * * *"
In the Feazel case the court concluded that the plaintiff had not proved adultery within the contemplation of LSA-C.C. Art. 185. The testimony of a third party witness as to an alleged act of adultery at about the time of conception was cast aside as being unworthy of belief, leaving as proof of defendant's adultery only her answers to interrogatories propounded to her by counsel for the plaintiff. These answers did not fix the time, place, date or person with whom any adulterous act was committed, but stated only that she never had sexual relations with her husband and that a child was born to her. The court found such an admission by defendant insufficient, standing alone, to prove adultery.
On the issue of proof of adultery, the facts of the instant case are almost identical to those of the Feazel case in that here also there is no evidence as to the time, place, date or person with whom any adulterous act was committed. We have here only the testimony of the defendant that she did not have sexual relations with the plaintiff and, of course, the fact that the child was born to her. Despite plaintiff's forceful argument, citing Professor Robert A. Pascal's criticism of the Feazel case found in 14 La. Law Review, 121 at page 125, that the birth of a child more than 300 days after voluntary separation would sufficiently corroborate her confession of adultery, we are constrained to follow the above expression of the law by our Supreme Court.
We note also the well established jurisprudence that a child born during marriage cannot be bastardized by the simple declarations of its mother as to legitimacy. See Tate v. Penne, 7 Mart.(N.S.) 548; Succession of Saloy, 44 La.Ann. 433, 10 So. 872; Smith v. Smith, 214 La. 881, 39 So.2d 162; Feazel v. Feazel, supra. Therefore, the testimony of defendant in the instant case, as well as her declaration in the birth certificate that the child's father is unknown, cannot overcome the presumption that defendant's husband is the father of her child.
Here the plaintiff has not only failed to prove adultery, but has likewise failed to prove concealment of the birth, within the contemplation of LSA-C.C. Art. 185, which is discussed in the Feazel case, supra, as follows:
"According to this same author, it is also necessary in order that the disavowal be possible that the wife should have concealed the birth of the child, and, as for knowing what are circumstances from which results a concealment, that is but a question of fact, to be decided by the judge in case of contestation. The decisions of the courts, says Baudry-Lacantinerie, give a great number of examples of facts which constitute concealment of the birth of the child. One of the most significant is the registry of the child either as born of unknown father and mother, or under assumed names, or as a natural child, or as belonging to a father other than the husband. To constitute concealment as contemplated by the law, such declarations must have been made with the knowledge of the mother."
In the above quotation from the Feazel case the court states that the issue of concealment depends upon the facts in each *575 particular case. In the Feazel case the wife remained in Shreveport, where the husband was also residing, for the first three months of her pregnancy and then went to Salina, Kansas, where the child was born, but there was no evidence to show that her reason for leaving Shreveport was to conceal her pregnancy. Furthermore, the child was born in a hospital and registered as the legitimate child of plaintiff, giving plaintiff's correct name, age, occupation and address.
In the instant case we have no difficulty in concluding, under the above cited jurisprudence, that the defendant did not conceal the birth of her child from the plaintiff. It is conceded by counsel in this case that concealment of pregnancy, as well as concealment of birth, is necessary. The facts here show clearly that plaintiff saw defendant semi-monthly all during her pregnancy and that toward the end of her time, her condition became obvious. Defendant's mother realized her condition three or four months before the birth. Defendant's employer realized her condition at least two months before the birth. Even the plaintiff admitted he had heard rumors of her pregnancy and that she looked like she was pregnant, but said he "couldn't be sure". It is true the defendant never told plaintiff she was pregnant but, on the other hand, he never asked her and she never denied it to plaintiff. The child was born in a hospital in Rayne where plaintiff and defendant were well known and which was only a few miles distance from plaintiff's residence. The birth of the child was registered immediately. The trial judge, who saw and heard the witnesses, found as a fact that defendant had not concealed her pregnancy or the birth of her child from the plaintiff.
Plaintiff argues strongly that this case differs from the Feazel case in that here the mother registered the child's father as "unknown." As the above quotation from the Feazel case points out, this may be most significant of attempted concealment in some cases, but in the instant case we do not consider it sufficient to change our finding. Here defendant did not go away secretively during her pregnancy and delivery. She remained at home and at work and plaintiff himself saw her every fifteen days. All who had eyes to see, realized she was pregnant.
It is therefore our conclusion that there has been no proof of adultery or concealment of birth, as contemplated by LSA-C.C. Art. 185, so as to entitle plaintiff to prove that he is not the child's father.
In the alternative plaintiff contends that he is entitled to a judgment disavowing his paternity of said minor under the provisions of LSA-C.C. Art. 188 which reads as follows:
"The legitimacy of the child born three hundred days after the separation from bed and board has been decreed, may be contested, unless it be proved that there had been cohabitation between the husband and wife since such decree, because it is always presumed that the parties have obeyed the sentence of separation.
"But in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved."
Citing Professor Robert A. Pascal's article in 14 La.Review, 121 at pages 123 and 124, plaintiff argues that the first paragraph of said Article 188 means simply that where a child is born 300 days or more after a judicial separation from bed and board, the legitimacy of the child may be contested by the father because it is presumed that the parties have obeyed the judgment of separation. Plaintiff argues that under paragraph 2 of said Article 188, which covers voluntary separation, cohabitation is always presumed, but the contrary may be proved and if proved, the husband is entitled to a judgment of disavowal. Of course, the question is how may "the contrary be proved." Can it be proved by the husband's *576 simple denial of cohabitation after voluntary separation, or by the testimony of the husband and the wife denying cohabitation, or, as in the instant case, by a combination of such testimony by plaintiff and defendant, corroborated by the negative testimony of members of the family that they did not know of any instance of cohabitation.
This question was answered in the early case of Tate v. Penne, 7 Mart. (N.S.) 548, which, insofar as we have been able to determine has never been overruled. There the court held as follows:
"The law (said our code at the time of the birth of the defendant) considers the husband of the mother as the father of all the children conceived during marriage. In case of voluntary separation, access is always presumed unless the contrary be proved: the presumption of paternity is at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible. C. Code, p. 45, art. 7, 10, & 11.
* * * * * *
"The legal presumption of the husband being the father, and of access being presumed in cases of voluntary separation can only be destroyed by evidence bringing the parties within the exception the law has created to the rule, namely the physical impossibility of connectionmoral will not do."
In the recent case of Williams v. Williams, 230 La. 1, 87 So.2d 707, the court did not discuss LSA-C.C. Art. 188 specifically but used the following strong language which indicates that lack of cohabitation may be shown only by proof of physical impossibility thereof:
"This presumption is conclusive, except in certain limited cases. Thus, the husband cannot disown the child even by alleging and proving his natural impotence. See, Article 185, LSA-C.C.
"While an action en desaveu may be based upon adultery in certain cases, the father contesting the legitimacy must prove that `the remoteness of the husband from the wife has been such that cohabitation has been physically impossible.' See, Article 189, LSA-C.C. Where husband and wife live in the same city, there is not such remoteness as will justify the bringing of an action en desaveu. Feasel v. Feazel, 222 La., 113, 62 So.2d 119; Tate v. Penne, 7 Mart. N.S., 548; Lejeune v. Lejeune, 184 La. 837, 167 So. 747."
It is therefore our opinion that under the second paragraph of LSA-C.C. Art. 188 the only way to prove there has been no cohabitation between parties voluntarily separated, is to show that by reason of the remoteness of the husband from the wife, cohabitation has been physically impossible, the same as is required under LSA-C.C. Art. 189.
Plaintiff's final argument in the alternative is that he "should be adjudged not the father of said minor by virtue of LSA-C.C. Art. 197." Our answer to this argument is that said Article 197 does not fall within Articles 184-192 dealing with the action of disavowal, which is brought by the husband disclaiming paternity of a child, but rather is found within Articles 193-197 dealing with the manner of proving legitimate filiation, which contemplates an action brought to prove that a certain person is the legitimate child of certain parents. The action of disavowal by the husband is much more restricted than the action to prove legitimate filiation and the articles dealing with the latter cannot be used in an action of disavowal.
No answer to the appeal was filed by appellees, but, in his brief filed in this court, the curator appointed to represent the minor child points out that his fee of $50 awarded by the trial judge covered only services rendered in the district court. The *577 curator asks that we award an additional fee to cover services performed in connection with this appeal. No answer to the appeal having been filed the lower court's judgment cannot be modified or amended in this regard (LSA-C.C.P. Art. 2133). However, the curator clearly had the duty to represent the minor on appeal (LSA-C.C.P. Articles 5095 and 5098); his fee for services must be fixed as costs of court (LSA-C.C.P. Art. 5096); the appellate court has the right to tax costs of the appellate court against any party to the suit as in its judgment may be considered equitable (LSA-C.C.P. Art. 2164). We are therefore of the opinion that an additional fee of $50 should be awarded to the curator and taxed as costs of this appeal.
For the reasons assigned, the judgment appealed from herein is affirmed. All costs of this appeal, including an additional fee of $50 for the curator representing Priscilla Ann Trahan, are assessed against the plaintiff.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.