178 So.2d 769 (1965)
Billy Frank LEWIS, Plaintiff-Appellant,
v.
Kimberly Sue POWELL, Defendant-Appellee.
No. 10414.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1965.
*770 Brown & O'Hearn, Shreveport, for plaintiff-appellant.
Joel M. Sermons, Shreveport, for defendant-appellee.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
This suit was brought by Billy Frank Lewis seeking to disavow the paternity of Kimberly Sue Powell. Plaintiff's demands were rejected and he has appealed.
Plaintiff and Barbara Ann Sisson were married June 30, 1956 and thereafter resided in Shreveport as man and wife until December 30, 1963 at which time the wife left the matrimonial domicile and went to Alexandria, Louisiana. There she remained until February 14, 1964 at which time she obtained employment in Oklahoma City and lived there until her return to Louisiana in November, 1964. Kimberly Sue was born in Shreveport on January 12, 1965. While in Oklahoma Mrs. Lewis communicated with her husband and advised him that she did not wish a reconciliation. In June, 1964 Lewis instituted a suit for separation by reason of abandonment. During this proceeding, which resulted in a judgment of separation "a mensa et thoro" rendered August 12, 1964, Mrs. Lewis made an appearance in the court in Shreveport.
This action en desaveu was timely filed on January 29, 1964 and on its trial the mother of Kimberly Sue Powell testified as to her absences from Shreveport, and that she had never cohabited with the plaintiff after December 30, 1963. Plaintiff testified to the same effect. In addition to this testimony plaintiff produced and filed in evidence the birth certificate of Kimberly Sue which named the father of the child as S. C. Powell, and gave his address as Moore, Oklahoma.
The trial court upheld legal objections as to the admissibility of the testimony of the mother and with respect to the filing in evidence of the birth certificate. The rulings in this respect were clearly proper. The principle is well established in our jurisprudence that a child born during marriage cannot be bastardized by the simple *771 declarations of its mother as to legitimacy. Succession of Flynn, 161 La. 707, 109 So. 395 (1926); Ezidore v. Cureau's Heirs, 113 La. 839, 37 So. 773 (1904); Eloi v. Mader, 1 Rob. 581 (La.1841). Trahan v. Trahan, La.App., 142 So.2d 571 (3rd Cir. 1962).
After the above mentioned evidence was ruled inadmissible plaintiff rested his case entirely upon the provisions of LSA-C.C. Art. 189 which state:
"The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."
In its reasons for judgment the court pointed out that the residences of the mother of the child in Alexandria and in Oklahoma were within a short distance of Shreveport where plaintiff resided, and accordingly, adequate proof of "remoteness" was not established.
By reason of Article 184 of the Civil Code the husband of the mother is considered the father of all children conceived during marriage. The presumption created by this article is perhaps the strongest recognized in our law. Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952). The policy so established has for its purpose the protection of innocent children born during marriage against scandalous attacks upon their paternity, inter alia, by the husband of the mother who may be seeking to avoid his obligations, or by others unscrupulously claiming the estate of the husband after death. Williams v. Williams, 230 La. 1, 87 So.2d 707 (1956). The success of plaintiff's case rests upon his ability to rebut the presumption of law that he is the father of the child. It is, therefore, necessary for him to show, in order to meet the conditions of Civil Code Article 189, that his remoteness from his wife was such that cohabitation was physically impossible. This legal principle so explicitly laid down in Tate v. Penne, 7 Mart.,N.S., 548 (1829) has been repeatedly approved by our appellate courts as disclosed in such cases as Feazel v. Feazel, Williams v. Williams, and Trahan v. Trahan, all cited supra. In Tate v. Penne the court said:
"* * * The legal presumption of the husband being the father, and of access being presumed in cases of voluntary separation, can only be destroyed by evidence bringing the parties within the exception the law has created to the rule, namely the physical impossibility of connexionmoral will not do.
"Now that physical impossibility can only be shown, by proving the residence of the husband and wife to be so remote from each other that access was impossible. * * *" [7 Mart.,N.S., 548 (1829)]
Our jurisprudence, almost without exception, has interpreted "remoteness" to mean physical distance. Ellis v. Henderson, 204 F.2d 173 (5th Cir. 1953); Williams v. Williams, 230 La. 1, 87 So.2d 707 (1956); Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952); Lejeune v. Lejeune, 184 La. 837, 167 So. 747 (1936); Succession of Barth, 178 La. 847, 152 So. 543, 91 A.L.R. 408 (1934); Switzer v. Switzer, 170 La. 550, 128 So. 477 (1930); Succession of Ledet, 122 La. 220, 47 So. 506 (1908); Vernon v. Vernon's Heirs, 6 La.Ann. 242 (1851); Tate v. Penne, 7 Mart.,N.S., 548 (1829); Singley v. Singley, La.App., 140 So.2d 546 (1st Cir. 1962); Harris v. Louisiana Oil Ref. Corp., 13 La.App. 416, 127 So. 40 (2d Cir. 1930).
In Gillies v. Gillies, La.App., 144 So.2d 893 (4th Cir. 1962. Cert. denied) however, Judge Richardson, the author of the opinion, made this comment:
"Our Courts have interpreted this Article to mean remoteness in distance. In this day and time there is no such thing as remoteness in distance as our means of transportation is much faster than it was at the time the Civil Code was written.

*772 The astronauts are going around the world at least three times within a very few hours and by way of the Super Jets and other means of transportation, most any place on the face of the earth can be reached from any other place within a matter of a few days or hours. Unless we can use Webster's New 20th Century Dictionary to interpret our Code as revised in 1950, remoteness means distance in human relations and aloofness such as remote and cold in his manner. The aloofness and coldness of either party makes the remoteness of the husband from the wife such that cohabitation is a physical impossibility." [144 So.2d 893, 896]
Relaxations of the rule as enunciated in Tate v. Penne have been suggested in comments appearing in the Louisiana Law Review. Thus Professor Robert A. Pascal (14 La.L.Rev. 123, 124) in disagreeing with the ruling in Feazel v. Feazel pointed out the action was initiated with cause as more than three hundred days had elapsed following the voluntary separation and there was proof the husband and his wife had not cohabited at any time of possible conception. The criticism suggests the decisions in the field of legitimate filiation have been contrary to the obvious biological facts and the common sense judgment of men. A scholarly discussion of the question appears in 23 La.L.Rev. 759 where the article entitled "Action en DesaveuChallenging the Presumption of the Husband's Paternity" observes, (p. 765), that although the concept of "distance in human relations" should have a place in Louisiana law, its use in Gillies v. Gillies is contrary to prior jurisprudence relative to the interpretation of remoteness. These comments, however, have not resulted in any significant changes in our jurisprudence.
Under the facts as established in this case we find no error in the judgment of which plaintiff complains and accordingly it is affirmed at appellant's cost.