HEARD, Judge.
This is an action by James Ray Heable for a divorce from his wife, Minnie Susan Foster Heable, and to disavow the paternity of a child, Gwen Rena Heable, born during the marriage. James Ray Heable married Minnie Susan Foster in Longview, Texas, on August 13, 1964. The couple established their matrimonial domicile in Shreveport, Louisiana and were judicially separated on September 22, 1965. Heable, an enlisted man in the United States Navy, testified that he did not live with his wife from the date of their separation until February 11, 1967.
During Heable’s tour of duty in the Republic of Vietnam he received six days of rest and relaxation leave in Hawaii. Prior to his leave he had been corresponding with his wife, a correspondence initiated by her. His wife met him in Hawaii where they cohabitated for three or four days before his return to duty. After their judicial separation Susan Heable had been sharing living quarters with various young women. Her roommate, prior to the time that she flew to Hawaii, was Pamela Youngblood, who testified that Susan Hea-ble received male visitors in their apartment several times during the months of November and December, 1966 and January and February, 1967. One particular visitor, Richard Wine, was credited with visiting Susan Heable and spending many hours behind the closed door of her bedroom. Miss Youngblood also testified that Susan Heable made the statement to her that she was pregnant and flying to Hawaii to meet her ex-husband and make him the father of the child. James Ray Heable received the news of his wife’s pregnancy before she reached the mainland after her visit with him. He testified that his brother had called him in Hawaii telling him of the rumors of her adultery and resulting pregnancy. He wrote his wife inquiring of her condition. First she was evasive, but as the months went by she told him that she was pregnant. Heable learned of the birth of the little girl, Gwen Rena, through the Red Cross. When he returned to Shreveport he learned of his ex-wife’s relations with other men, sought a divorce ánd disavowal of paternity of the child.
After trial James Ray Heable was granted an absolute divorce from Minnie Susan Foster Heable on the grounds of adultery and was declared not to be the natural father of the minor child, Gwen Rena Heable.
This appeal was taken on the paternity issue alone, alleging that the child was born not less than 180 days nor more than 300 days from the cohabitation.
Louisiana provides children with the strongest possible presumption of paternity. LSA-C.C. Art. 184 provides that the husband of the mother is the father of all children conceived during the marriage. Articles 186 and 187 set out the time limits for the presumption. If a child is born within 180 days of the marriage he is not presumed to be the child of the husband. If the child is born 300 days after dissolution of the marriage or decree of separa *849 tion from bed and board he is not presumed to be the father of the child unless cohabitation can be proven.
In this case the parties had been judicially separated for sixteen months, the husband stationed overseas the latter six months of that period. However, the couple cohabited two or three days in Hawaii, 247 days prior to the birth of the child. Heable admitted they lived as man and wife during that time. Thus, the presumption lies in favor of the child. The husband contends no presumption should exist because the cohabitation was induced by fraud. This position is untenable because the Civil Code speaks not to the nature of cohabitation but to the mere fact of cohabitation. The only evidence to rebut the presumption of Article 189 is remoteness of the parties which makes cohabitation physically impossible. Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952) and Singley v. Singley, La.App., 140 So.2d 546 (1st Cir. 1962).
James Ray Heable put forth evidence tending to show that he was not the father of the child. Over the objections of defense counsel, Pamela Youngblood testified that Susan Heable stated she was pregnant before she flew to Hawaii and that she went for the purpose of making Heable the father of the child. The testimony of two physicians was introduced by depositions. That of Dr. Robert W. Wilson, Mrs. Hea-ble’s treating physician, was objected to as being in contravention of the physician-patient privilege which had not been waived. The trial court refused to admit the testimony which was the correct ruling in light of LSA-R.S. 13:3734 of 1968. The statute provides that the physician cannot be examined in a civil action as to the fact of the attending doctor or to any information acquired in attending the patient without the consent of the patient. There are exceptions provided in the statute but these exceptions are not applicable to this case. Also introduced by deposition was the testimony of Dr. Ben B. Singletary who testified that the earliest date for detection of pregnancy is sixteen days from conception. This testimony was objected to on the ground that it was a hypothetical question without an adequate foundation. That basis for objection is groundless. As stated in Jones on Evidence, paragraph 370 page 693:
“Qualified expert witnesses are not confined in their testimony to facts which are within their own personal knowledge. They may state opinions which are based on assumed facts.”
Dr. Singletary’s testimony was to the effect that it was medically impossible for Mrs. Heable to have shown a positive reaction to the pregnancy test within four days of the cohabitation with her husband. Yet her roommate testified that Mrs. Hea-ble was diagnosed as pregnant on February 15, 1967, the day she returned from Hawaii.
The trial court found that the presumption of paternity could be contested by plaintiff in this case as cohabitation with the defendant was after conception of the child and the child was born more than 300 days after the decree of separation.
In the case of Lambert v. Lambert, La.App., 164 So.2d 661 (3d Cir. 1964) Judge Tate, as organ of the court, gave a very scholarly dissertation of the law of filiation. There the husband and wife voluntarily separated for a period of five months from September 30, 1958 to March 4, 1959. The wife went to live in California; the husband remained in the family home in DeRidder. A distance of 2000 miles separated the parties until they reconciled on March 4, 1959. Around May 15, 1959 the husband became suspicious that the expected child was not his and moved his wife into a nearby apartment. The child was born on October 5, 1959 and registered as the child of the husband, 216 *850 days after the couple resumed conjugal life. The father instituted an action to disavow based upon medical evidence indicating a child born seven months after reconciliation had been conceived nine months prior to birth and during the period the wife was in California. The evidence showed the child was not premature at birth and the wife testified that she had conceived the child before she left for California, or 370 days before its birth. The husband contended that medical evidence is admissible to show remoteness as a ground for disavowal under Article 189 of the Civil Code. The Curator for the child contended that the defense of remoteness is available only when the husband and wife are remote during the entire 180-300 day period before the birth of the child. Judge Tate, in his analysis of the French authorities, relied on Article 312 of the French Code and Planiol for his conclusion that the remoteness must continue during the entire 180-300 day period. The court went on to hold that the husband’s medical testimony was not sufficient to overcome the Codal provisions presuming the birth, as a matter of law, to be the result of the cohabitation of the spouses.
In this case the child was born 247 days after cohabitation of James Ray Heable and his wife Susan, the period of time being after 180 and before 300 days of the birth of the child. Therefore, the husband’s proof that he and his wife were remote during part of the period and the evidence tending to show that the pregnancy commenced during the separation is not sufficient to overcome the Codal provisions presuming the child legitimate as a matter of law.
For the foregoing reasons the judgment of the trial court relative to the disavowal of paternity is reversed and plaintiff’s demands for the same are dismissed.
All costs of this proceeding are to be paid by plaintiff-appellee.