SAMUEL, Judge
(dissenting).
It might appear from the opening paragraph of the majority opinion and that opinion’s almost total disregard of the sworn testimony given during the trial that the former registrar of vital statistics, rather than the issue involved, is on trial in this proceeding.[1] I find it necessary to state the facts shown by the record.
Relators, Orelia Moten, individually and on behalf of her minor children, Gary Wilton Moten and Wesley Randolph Moten, and her major children, Olga Juan Moten, Lois Leander Moten, James Ronald Moten and Gail Patricia Moten, filed this suit against William H. Stewart, M. D., executive director of Louisiana Health, Rehabilitation and Human Resources Administration, seeking a writ of mandamus compelling the defendant to change the present birth certificates of the six children so as to show James Thomas as their father and their surnames as Thomas instead of Moten, the latter being the maiden surname of the relator-mother. All of the relators live in New Orleans where all of the children were born.
Following trial, there was judgment in favor of the defendant, dismissing the suit. Relators have appealed.
The record reveals Orelia Moten lived with the late James Thomas, the alleged father of the children, for a number of years without being married to him and she testified the children were born as a result of that cohabitation. Each of the original birth certificates contained the surname Thomas because the mother, using the name Orelia Thomas, had stated the father’s name was James Thomas and, apparently, that the children were legitimate. The eldest of the six children was born May 19, 1947; the youngest was born June 17, 1956.
On May 25, 1964, Orelia Moten appeared at the office of the then registrar of vital statistics for the Parish of Orleans in response to notice from that office, apparently sent for the purpose of obtaining information relative to her application for a certified copy of the birth certificate of one of the children. There she executed an office form substantially stating she had never been legally married at any time, and, particularly, that she and James Thomas were never married to each other. On the strength of this acknowledgment the registrar changed the birth certificates of the children so that their surnames appeared thereon as Moten instead of Thomas and the spaces provided for the father’s name and information regarding the father were left blank.
The trial court allowed relators to proffer baptismal certificates on which the name James Thomas was entered as the father of the children. Although it was alleged in the proffer Thomas was present at the time of each baptism, those certificates were not signed by him and it is admitted Thomas and Orelia Moten were never married to each other. Moreover, Thomas did not le *648 gitimate the children in accordance with our codal and statutory law.[2] Relators also entered into evidence documents executed by Thomas authorizing Charity Hospital to accept the mother for childbirth.
Relators contend the changes in the birth certificates were made without proper authority and constitute a deprivation of their liberty and property without due process of law. Defendant relies on the statutory provisions which have been judicially interpreted as authority for the alteration of birth certificates upon the presentation of acceptable evidence.[3]
The authority for the alteration of birth and death certificates and the evidence necessary to justify such alterations in the City of New Orleans is R.S. 40:266,[4] which now reads:
“No certificate or record on file in the local registrar’s office shall be altered except upon submission of sufficient documentary or sworn evidence acceptable as a basis of the alteration.” LSA-R.S. 40:266.
The jurisprudence has recognized the constitutionality of this statute insofar as due process is concerned. In State v. City of New Orleans,[5] the constitutionality was upheld against an argument of denial of due process of law under both state and federal constitutions, even though the statute did not provide for prior notice or hearing or for an appeal, since the remedy of mandamus was available to have the records corrected “in accordance with the true facts.”[6] The importance of having public records which reflect the true facts in the area of births and deaths is obvious and, as the courts have recognized, the paramount pub-lie interest is to have birth and death records correct in substance.[7]
The history of R.S. 40:266 shows the legislature clearly intended the integrity of public records in the area of births and deaths be maintained administratively and not judicially. As originally enacted by Act 257 of 1918 the statute specifically provided no certificate of birth or death “shall be altered or changed in any respect otherwise than by judgment of court of competent jurisdiction. * * *” The statute was amended by Act 181 of 1942 to eliminate the necessity of judicial proceedings to effect alteration of such records. As thus amended the statute stated no birth or death certificate may be altered or changed “except upon submission of sufficient documentary and/or, sworn evidence acceptable as a basis of such change or alteration.” The statute again was amended in 1950[8] to remove surplus verbiage, but it otherwise remains unchanged from the 1942 amendment in its substantive provisions.
By maintaining the right of the state to alter birth and death records administratively, both State v. City of New Orleans cases [9] recognized the intent of the legislature to remove from the courts the burden of guarding the correctness of these records. The impracticability of requiring notice and a hearing was specifically recognized in one of those opinions, in which the court said:
“The complete impracticability of requiring notice and a hearing in such cases is made apparent by the facts which are found here where it is shown that almost innumerable persons will be affected. What members of the family must be *649 notified? What members must be present at a hearing? After the second or third generation innumerable children, grandchildren and great grandchildren may be interested. It would be completely impracticable to hold that a correction could not be made in the public record unless a notice and opportunity to be heard had been given to each person who, as a blood decedent, might be interested in the matter.”[10]
However, as in the instant case, judicial review by mandamus was recognized as an alternative for those with a legitimate right to have the records altered to reflect the true facts. Thus, the rights involved in this case are governed by Act 181 of 1942 and Act 237 of 1950, now R.S. 40:266, and the evidence must be reviewed in the context of these acts and the jurisprudence interpretive thereof.
Orelia Moten acknowledged over her signature on the registrar’s office form that she was never married to Thomas. Assuming arguendo, as strongly implied in the majority opinion and only for the purpose of this dissent, the action of the registrar in some way denied relators’ right to due process by not affording prior notice of the purpose for which the relator-mother' was contacted, such denial was rendered moot by the fact that she testified upon judicial review to the truth of the identical facts she gave to the registrar. If she had been tricked, intimidated, or otherwise abused by the registrar into stating an untruth to her prejudice or to the prejudice of the other relators, their right to mandamus clearly afforded more than ample time and opportunity to discover the true facts and to so testify with the benefit of able counsel to assist her. Nevertheless, her sworn testimony only reinforced her statements to the registrar.
At the trial Orelia Moten not only testified she was never married to Thomas and that he never acknowledged or legitimated the children; she also testified that before she began to live with Thomas and before the children were conceived, she was legally married to a man named Jones in Poncha-toula, during which marriage she bore two children. She also testified she had not seen Jones since 1937.
The only evidence relative to a termination of the marriage between Orelia Moten and Jones is the testimony of Orelia Moten herself. She did not testify she and Jones had been divorced. She did testify Jones had died before the eldest child in suit was born. However, that testimony was only unacceptable hearsay. She admitted she knew of Jones’ death solely as a result of being so informed by his son, who lived in Gretna (immediately adjacent to the City of New Orleans), and she gave neither the time the information was given to her nor the time or place of the asserted death. The failure to produce Jones’ death certificate, particularly in view of the fact that information necessary to obtaining the same was readily available from Jones’ son, could be indicative of one of two facts, either Jones was not dead or he had died subsequent to the conceptions of the children in suit. Thus, the record contains no acceptable evidence showing the marriage between Jones and Orelia Moten was ever terminated.
What has been described in the jurisprudence as “the strongest presumption known in law”[11] is found in Civil Code Article 184, which provides:
“The law considers the husband of the mother as the father of all children conceived during the marriage.”
Under our jurisprudence only the husband can contest paternity, and then only within narrow limitations; the courts consistently have disregarded the mother’s declaration that the father of her child is someone other than her husband.[12]
*650 In a mandamus proceeding to change an official public record, it is incumbent upon the relator to show that the record is incorrect and that the change sought is correct. Here the relators have failed to carry that burden. As the record contains no acceptable proof of a termination of the marriage between Orelia Moten and Jones, the father of the children in this suit must be presumed to be Jones, who, insofar as is shown by this record, was the husband of the mother at the time of their conception. To grant their request to change the birth certificates to show James Thomas as their father and Thomas as their surname would result in the certificates stating facts which, on the record before us, are not legally true. It is inconceivable to me that the strong presumption of Jones’ paternity can be ignored or that, upon the proof offered by relators, the birth records correctly can reflect anything to the contrary.
It is the truth of the information contained in the vital statistics records which is the issue before this court. Assuming ar-guendo that the unsworn statement of the mother of the children, that she had never been legally married, was not documentary or sworn evidence sufficient under R.S. 40:266, we are still faced with the sworn testimony of Orelia Moten, testimony which clearly and unequivocally asserts she had never been legally married to Thomas and that she had been legally married to Jones. The trial court could not, and this court should not, ignore such sworn testimony. Nor should either court ignore the fact that, insofar as is shown by this record, the legal marriage to Jones had not been terminated when the children in suit were conceived.
Accordingly, being of the opinion the judgment appealed from should be affirmed, I respectfully dissent.

. The majority opinion states “Even on the non-documentary and unsworn evidence the registrar had no basis to dispute, much less to delete, the original certificates’ declaration that James Thomas was plaintiff children’s father.” The testimony of the mother at the trial is given no consideration in this regard.

. See Civil Code Article 200 and Revised Statute 9:391.

. State v. City of New Orleans, La.App., 94 So.2d 108; see R.S. 40:265 and 40:266; see also R.S. 40:322 and 40:323, which applied to the remainder of the state.

. See State v. City of New Orleans, supra, footnote 3; State v. City of New Orleans, La.App., 78 So.2d 855.

. Supra, footnote 3.

. 94 So.2d 108, at 113.

. State v. Louisiana State Board of Health, La.App., 54 So.2d 343. This case involved the State Board of Health but arose out of the City of New Orleans and was decided on an appeal from the Civil District Court for the Parish of Orleans.

. Act 237 of 1950.

. See footnotes 3 and 4, supra.

. State v. City of New Orleans, La.App., 94 So.2d 108, at 113.

. See Feazel v. Feazel, 222 La. 113, 62 So.2d 119.

. Feazel v. Feazel, supra, footnote 11; Beard v. Vincent, 174 La. 869, 141 So. 862; Dejol v. Johnson, 12 La.Ann. 853; Succession of Barlow, La.App., 197 So.2d 682; see Case Note, Persons-Presumption of Paternity Under Louisiana Civil Code Article 184, 16 Loyola L. Rev. 235.