438 So.2d 615 (1983)
Danny Ray VERNEUILLE
v.
Vanessa Seube Verneuille, Wife of Danny Ray VERNEUILLE and Danny Verneuille, Jr. a/k/a Christopher Michael Verneuille.
No. CA-0366.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
Rehearing Denied October 27, 1983.
Writ Denied December 16, 1983.
Katherine L. Kennedy, Chalmette, for defendant-appellant.
Before AUGUSTINE, BYRNES and WILLIAMS, JJ.
*616 AUGUSTINE, Judge.
Plaintiff Danny Ray Verneuille filed this action en desaveu and for nullity of marriage (and, in the alternative, for separation a mensa et thoro). He alleges that at the time of his marriage to Vanessa Seube on October 11, 1980, Miss Seube was pregnant with Christopher Michael Verneuille, who was born on December 26, 1980, seventy-six days after the wedding ceremony. Plaintiff avers that since he was neither dating nor having sexual intercourse with Miss Seube during the period in which the child was conceived,[1] he cannot be the father, and further, that he was induced to marry Miss Seube solely because of her false and fraudulent representations that the child she was carrying was his. Mr. Verneuille alleges that he did not learn that the child is not his until December 26, 1980, the day Christopher was born, and that since that time, he has remained away from the matrimonial domicile. Mr. Verneuille's original petition also contains a formal motion requesting the trial court to order Mrs. Verneuille, the child Christopher, and the plaintiff to submit to blood tests to determine paternity.
By an amending and supplemental petition, plaintiff asserts that "at the time plaintiff contracted the marriage with the defendant, plaintiff was acting under a mistake and in error as to the entire identity of the defendant, Vanessa Seube Verneuille."
The defendants filed exceptions of no cause and no right of action in response to each of the plaintiff's allegations. The trial court maintained all of the exceptions and dismissed plaintiff's case in its entirety, including, of course, plaintiff's motion to compel blood tests. The plaintiff now brings this appeal.
With respect to the efficacy of the plaintiff's pleadings in support of his action for disavowal, we begin by noting that:
"The husband of the mother is presumed to be the father of all children born or conceived during the marriage." La.C.C. Art. 184.
Whether the foregoing Article remains "the strongest presumption in law"[2] is now open to question. Although, historically, the presumption of a husband's paternity has been rebuttable only in theory,[3] a recent amendment to the Civil Code now provides that the presumption will be overdone "if (the husband) proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father." La.C.C. Art. 187.
But however diluted the "strongest presumption" may be as a result of Article 187, this much is clear:
"A man who marries a pregnant woman and who knows that she is pregnant at the time of the marriage cannot disavow paternity of such child born of such pregnancy. If another man is presumed to be the father, however, then the provisions of Article 186 apply...." (Emphasis added). La.C.C. Art. 188 (Emphasis added).
The Civil Code recognizes only two instances in which "another man is presumed to be the father"; both of these are found in Article 185:
"A child born less than three hundred days after the dissolution of the marriage is presumed to have been conceived during the marriage. A child born three hundred days or more after the dissolution of the marriage is not presumed to be the child of the husband."
In the present case, plaintiff cannot and does not avail himself of the presumption of another man's paternity which arises under *617 the foregoing Code article. It follows that plaintiff cannot maintain this action en desaveu.
In reaching this conclusion, we have carefully considered plaintiff's argument that blood tests may provide the only means to rebut the presumption of the husband's paternity, and we agree that the very purpose of blood test legislation[4] and of recent amendments to the articles governing disavowal[5] is to facilitate rebuttal of the husband's paternity. But Article 188 is clear and unambiguous; it establishes a conclusive presumption of the plaintiff's paternity. He is among that class of husbands from whom the law will not receive rebuttal evidence, for it cannot be said in this case that "another man is presumed to be the father." We therefore affirm the trial court's dismissal of the plaintiff's action en desaveu.
It follows from what has been said that plaintiff's action for separation on grounds of cruelty and ill treatment must also be dismissed for failure to state a cause of action. This is so because the essential allegationthat another man is Christopher Michael's fathercannot be entertained by our courts. Art. 188 prohibits disavowal by a husband in the plaintiff's circumstances, and we understand that article to mean that whether in the context of an action en desaveu or in a suit for separation, such a plaintiff cannot be heard to allege another man's paternity of a child who is conclusively presumed to be his own.
Plaintiff's suit for annulment of the marriage on the ground of duress must also be dismissed, for although it is true that "no marriage is valid to which the parties have not freely consented", Art. 110, there is no allegation that the marriage was coerced by threats or violence. Art. 91.[6]
With respect to plaintiff's action for annulment on grounds of fraud, it has been said correctly that:
"... Article 91(3)[7] does not speak of fraud. It is obvious, however, that fraud is merely induced mistake and therefore comes within the terms of Article 91(3)...". The Grounds for Annulment in Louisiana, 24 Tul.L.Rev. 217 (1949).
The jurisprudence interpreting Article 91(3), however, strictly confines the phrase "mistake respecting the person" to mean "mistake respecting the physical identity of the person." Delpit v. Young, 25 So. 547 (La.1899). The fraud alleged in this case does not concern the physical identity of Mrs. Verneuille, but rather her deceit in inducing the plaintiff to marry her on his false belief that the child she carried was his. Delpit, therefore, requires dismissal of plaintiff's suit on grounds of fraud.
Finally, plaintiff's amending and supplemental petition seeks to bring this case squarely within Art. 91(3), supra, and Delpit by alleging that:
"the marriage between plaintiff and defendant is an absolute nullity in that at the time plaintiff contracted the marriage with the defendant, plaintiff was acting under a mistake and in error as to the entire identity of the defendant, Vanessa Seube Verneuille". (Emphasis added).
Accepting as true, as we must, the allegation that plaintiff married Vanessa Seube in the mistaken belief that she was someone else, we nevertheless affirm the trial court's dismissal of the action for nullity on the grounds of mistaken identity. Article 111 states that:
"In the cases embraced by the preceding article, the application to obtain a sentence annulling the marriage, is inadmissible, if the married persons have, freely and without constraint, cohabited *618 together after ... discovering the mistake." (Emphasis added).
By plaintiff's own admission, he lived with Mrs. Verneuille as her husband for seventy-three days following the wedding, and did not leave the marital domicile until the child was born on December 26, 1980. Under these circumstances, Art. 111 operates to deny the plaintiff a right of action: "the (plaintiff's) application to obtain a sentence annulling the marriage, is inadmissible...".
There being no viable case before the bar on any of the grounds alleged, and the plaintiff being barred from asserting his non-paternity in any event, the trial court did not err in denying plaintiff's motion to compel blood tests under La.R.S. 9:396.[8]
Accordingly, the decision of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The period is alleged to be between March 28, 1980 and April 18, 1980. According to plaintiff's petition, Christopher was born two to three weeks prematurely.
[2] Feazel v. Feazel, 222 La. 113, 62 So.2d 119, 120 (La.1952).
[3] See Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 (La.1972); Williams v. Williams, 230 La. 1, 87 So.2d 707 (La.1956); Feazel, supra, Succession of Saloy, 10 So. 872 (La.1892); Lewis v. Powell, 178 So.2d 769 (La.App. 2d Cir.1965); Burrell v. Burrell, 154 So.2d 103 (La. App. 1st Cir.1963).
[4] La.R.S. 9:396, et seq.
[5] Arts. 184, et seq.
[6] "Art. 91: No marriage is valid to which the parties have not freely consented. Consent is not free: ... (2) When it is extorted by violence".
[7] Art. 91(3): "Consent is not free ... when there is a mistake respecting the person, who one of the parties intended to marry".
[8] La.R.S. 9:396 provides:

"Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require." (Emphasis added).