217 So.2d 47 (1968)
Ruffin GEORGE et ux., Plaintiffs-Appellants,
v.
Ora BERTRAND et al., Defendants-Appellees.
No. 2510.
Court of Appeal of Louisiana, Third Circuit.
December 5, 1968.
Rehearing Denied January 10, 1969.
Dissenting Opinion January 15, 1969.
Writ Refused February 28, 1969.
Fusilier, Pucheu & Soileau, by A. Gaynor Soileau, Ville Platte, for plaintiffs-appellants.
Davidson, Meaux, Onebane & Donohoe, by Edward C. Abell, Jr., Lafayette, for intervenor-appellant.
Landry, Watkins, Cousin & Bonin, by William O. Bonin, New Iberia, for defendants-appellees.
Before FRUGÉ, HOOD, and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a death action arising out of the death of Vergie Lee George, brought by his alleged father, Ruffin George, appellant, and Velma Roxie Myles George. The plaintiffs in the court below filed an original and three supplemental and amending petitions, to which defendants filed various exceptions. In essence, and without going *48 into detail regarding each petition and each exception thereto, all the defendants filed the exception of no cause of action in that the pleadings indicated that Velma Roxie Myles and one Willie Jackson, the latter not being a party to this action, were married on May 29, 1937, and that Vergie Lee George, the alleged acknowledged child of Ruffin George, was born to Velma Roxie Myles Jackson on August 5, 1947, which was prior to her divorce from Willie Jackson on September 10, 1948.
Defendants' exception challenged the right of plaintiffs to recover for the death of Vergie Lee George under Louisiana C.C. Art. 2315 under the facts alleged. The district court maintained the exception as to Ruffin George and dismissed his suit, giving rise to this appeal. The exception was overruled as to Velma Roxie Myles George and the validity of this ruling is not before this court and will not be discussed further. Highlands Insurance Company, intervenor, seeking recovery for Workmen's compensation benefits paid, has filed a brief herein seeking reversal of the judgment against Ruffin George.[1]
The essential question to be answered in this case is as follows: May the alleged, acknowledged father of a child born during the marriage of its mother and her legal husband have the right to maintain an action in wrongful death for the death of the alleged son?
There is no question that the child, Vergie Lee George, was conceived and born during the marriage of Velma Roxie Myles and Willie Jackson. It was established, however, that at the time of its conception and birth, Velma Roxie Myles was living with one Ruffin George, the plaintiff herein. Under these circumstances, the child, Vergie Lee George is the legitimate son of Velma Roxie Myles and Willie Jackson the authority for this being the well-known presumption that the husband of the mother is the father of the child. La.C.C. Art. 184.
The presumption referred to is so firmly fixed in our law that it requires no further citation. It has been referred to as "the strongest presumption known in law". Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952).
Plaintiffs admit in their brief that no action has been brought by Willie Jackson, the legal husband of Velma Roxie Myles, to disavow the paternity of Vergie Lee George, the deceased. Therefore, there is no reason that the presumption should not apply.
In the case of Succession of Barlow, 197 So.2d 682 (La.App.4th Cir., 1967), writ refused, 1967, the court encountered a question as follows:
"* * * Can a child who is presumed to be the legitimate child of the mother's husband under LSA-C.C. art. 184 also be the legitimated child under LSA-C.C. art. 198 of the actual father and mother by their subsequent marriage after removal of impediments?"
This question brings to light the basic issue in this casethat being whether Ruffin George, having acknowledged the child, legitimated him so as to be allowed the right of maintaining a wrongful death action at the son's death.
The court in the above-cited case, in a well-reasoned opinion, maintained that a child could not be both legitimate, in that he was born during the marriage of his mother and her husband, and legitimated in that his mother and her second husband, in their marriage, had attempted such legitimation. *49 The court reasoned that such could not be the case as is evidenced by the following language:
"We must reject appellant's argument that a child can be both legitimate of one father and legitimated as regards another father. If the argument were valid, what of her relationship in such a situation to her mother? Would she be both legitimate and legitimated? We think this would be a conflict of status not sanctioned by LSA-C.C. art. 178, which provides: `Children are either legitimate, illegitimate, or legitimated' Note the `either or' possibilities only."
Under the ruling of the Barlow case, supra, it is evident that Ruffin George, not being the legal father of Vergie Lee George, does not have a right of action for wrongful death under Louisiana C.C. Art. 2315.
Plaintiffs based strong argument upon the recent Supreme Court rulings in the cases of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and Glona v. American Guarantee and Liability Insurance Company, 391 U.S. 73, 88 S.Ct. 1512, 1515, 20 L.Ed.2d 441 (1968). In short, these cases hold that an illegitimate child, or the mother of an illegitimate child cannot be prevented from suing under La.C.C. Art. 2315 for the death of the other. The Supreme Court declared that the denial, to an illegitimate child or the mother of an illegitimate child, of the right to recover for the wrongful death of the other, on whom they were dependent, constituted invidious discrimination against them.
It is obvious from the wording of these cases that they have no application to the facts at hand. Vergie Lee George was not an illegitimate, but rather the legitimate child of Velma Roxie Myles and Willie Jackson. There is no discrimination against Ruffin George, he is simply not the legitimate father of the deceased.
If we were to allow Ruffin George to maintain this action, what of the rights of the legal father, Willie Jackson? Would both be able to maintain an action under La.C.C. Art. 2315 for the death of "their" son? We think the necessity of ruling for defendants is obvious.
For the foregoing reasons, the judgment of the lower court, in sustaining the no cause of action exception as against Ruffin George, is hereby affirmed. Costs to be paid by plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, Judge (dissenting from denial).
I respectfully dissent from my esteemed brethren's denial of rehearing. In my view, we are in error in our original opinion holding that Ruffin George, the father of the decedent (Vergie Lee George), has no cause of action for his wrongful death.
Accepted as correct for purposes of this exception are the following alleged facts, and the following dates:
Vergie Lee, a 19-year-old boy, was living with his mother and father, Mr. and Mrs. Ruffin George. He was contributing to their support at the time he was killed through the defendants' negligence. He was conceived and born while his parents were living together as man and wife; he was registered as their legitimate son when he was born in 1947; and he lived all his life with them as their son.
Vergie Lee's parents were not formally married until 1949, after his birth. This is of no moment, ordinarily. Civil Code Article 198 provides: "Children born out marriage, except those who are born from an incestuous connection, are legitimated by the subsequent marriage of their father and mother * * *."
Ruffin George is admittedly the biological father of the boy he raised and grieves for. The union of his parents was formalized by marriage following his birth out *50 of wedlock. He is their acknowledged son, living in their household all his life. What, then, prevents us from applying Civil Code Article 198 and considering him as the legitimate son of these parents in this stable union, solemnized by marriage two decades ago?
We hold that we cannot follow common sense, as well as the literal terms of Civil Code Article 198, because Ruffin George's mother had been married to one Willie Jackson back in 1937, eleven years before Vergie Lee George was born. We do not deny that the 1949 marriage of the Georges is valid, since Willie Jackson had divorced Vergie Lee's mother in 1948, a year after his birth. (In this divorce petition, Jackson had claimed as a child of the marriage only an infant born of this earlier union.) So far as the pleadings reveal, Willie Jackson had never seen Vergie Lee's mother for ten years at the time the boy was born; did not know of her subsequent union with Ruffin George; had never seen their boy; did not even know of his existenceand yet, we say, that Willie Jackson alone can be the father of this boy, whom he never knew and who never knew him!
Why do we say this? We say this because, under Civil Code Article 184, "The law considers the husband of the mother as the father of all children conceived during the marriage." When a father seeks to disavow parentage of children born of the marriage, we consider this one of the strongest presumptions known to our law. Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952).
Admitting the validity of Article 184's presumption (especially in the protection of children otherwise helpless against attempts to deny their legitimacy, see Planiol, Civil Law Treatise, Vol. 1, Section 1411, LSLI translation, 1959), I am unable to see why this should prevent us from applying Article 198's provision, of equal dignity, that a child born out of marriage is legitimated by the subsequent marriage of his parents and their acknowledgment of him as their child.
In such instances, in applying the modern French provision similar to our Article 198 (which French article now likewise permits legitimation by subsequent marriage, of children born of an adulterous connection), the French courts hold that the child is legitimated by the subsequent marriage of its natural parents, even though the wife's first husband did not disavow the child born during the first marriage. Planiol, Civil Law Treatise, Vol. 1, Section 1418 (LSLI translation, 1959). In such instances, the presumption of the paternity of the first husband ceases to apply.
Before it was amended in 1948 (the second amendment of the 1870 version of the article), Article 198 permitted legitimation by subsequent marriage of all children born out of marriage "except those who are born from an incestuous or adulterous connection." By Act 482 of 1948, the code provision was amended for the sole purpose of deleting the italicized wordsfor the sole purpose of permitting legitimation of children born while one or more of their parents was legally married to someone other than their natural parent. The majority's interpretation ignores this deliberate legislative amendment and thwarts or greatly limits the legislative intention that children, such as the decedent here, be legitimized in accordance with their actual parentage if their parents subsequently become married to one another.
It is to be noted that Article 198 permits legitimation of all "children" by the subsequent marriage of their parents (except those born from an incestuous connection). The article does not provide that only illegitimate children shall be so legitimated. Under Article 178, "Children are either legitimate, illegitimate, or legitimated." Article 198's broad provision, that "children" are legitimated when their natural parents marry, seems to me on its face to permit legitimation of all children in accordance with their natural parentage, *51 whether or not (with regard to other relationships) they may be technically legitimate or illegitimate.
But even if we do not want to displace the Article 184 presumption by the Article 192 legitimation, I see no real reason not to apply both the presumption of legitimacy as to the first father and the provision for legitimation by marriage as to the second father.
If the objection is made, how can a child have two fathers? I would reply: We are talking of relationships created by law, not by nature. Just as from a putative marriage may result two legal wives simultaneously and two simultaneous sets of children entitled to all the benefits of legitimacy; just so, as a matter of law, by virtue of two separate legislative enactments, may two men be considered fathers of the same child.[1]
Or it may be argued: A child must be "either legitimate, illegitimate, or legitimated" (Civil Code Article 178), so cannot be both legitimate as to one father and legitimated as to another. Assuming that the legitimation by marriage of the real parents does not displace the presumption of legitimacy as to the first husband, I do not believe that the descriptive code provision is designed to have the ironbound prescriptive force argued for.
For instance, Henry v. Jean, 238 La. 314, 115 So.2d 363, concerned an interpretation of the legitimation of children by the subsequent marriage of their parents, as provided by Article 198 at issue here. There, the parents had had five children prior to their marriage in 1900. At that time (and until its amendment in 1944), Article 198 provided that legitimation by subsequent marriage could take place only by notarial act or marriage contract. These formalities were not attended to before the father died in 1930. The pre-marriage children were thus the illegitimate children of their father. Nevertheless, when the mother died in 1950, the Supreme Court held that these children were the legitimate children of the mother, since the 1944 amendment retroactively legitimated them as to her. This could not, however, have retroactive effect so as to change substantive rights of inheritance vested in others through the 1937 death of the father, as to whom they were illegitimates not entitled to inherit, 115 So.2d 367.
To me, it defies any sort of functional purpose of the articles of the Civil Code here applied (or not applied) to hold that a stranger can contend that Willie Jackson alone is the father of the dead child, by virtue of a completely artificial presumption  a presumption designed after all to protect children, not tortfeasors. I cannot believe we are required mechanically to apply this obviously false presumption so as to exclude the application of Article 198, functionally intended to legitimate children such as the decedent under the present circumstancesand thus to hold that Ruffin George, the true, father, is not a "surviving father" entitled under Civil Code Article 2315 to recover damages for the wrongful death of his child.
With due respect for my esteemed brethren of the majority, as well as for my brothers of the Fourth Circuit who reached a somewhat similar conclusion in Succession *52 of Barlow, La.App., 197 So.2d 682,[2] this sort of supremely technical application of word-rules ignores the fundamental aim of statutory interpretation: To apply legislation in accord with its functional purpose and to accomplish the legislative aims. I cannot believe the legislature ever contemplated that its enactments should be interpreted and applied to prevent legitimation of the child under present circumstances.
I should perhaps add that there is serious scholarly authority supporting the proposition that the presumption of legitimacy by birth during an existing marriage does not extend to circumstances such as the present, where a child does not enjoy the reputation of legitimacy because born during his mother's open concubinage with other than the father. See Civil Code Articles 195-197, in the light of their French parent-provisions: Pascal, 18 La. L.Rev. 121-26 (1953); Comment, 13 La.L. Rev. 587 (1953) and 14 La.L.Rev. 401 (1954); see, e.g., Planiol, Civil Law Treatise, Vol. 1, Sections 1430, 1436.
I further do not reach consideration of whether equal protection is unconstitutionally denied the bereaved father through denying him recovery for his child simply because of his wife's ancient marriage, dissolved by divorce long before his son's death. See Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). (If neither the father nor his wife had ever married, he would have had a cause of action for his son's death. If his wife's first husband had divorced her a year earlier, he would have had a cause of action. Only in the present peculiar configuration of circumstances, none of which he could control insofar as relevant, is he left without redress for the wrongful death of his boy. I do not believe the Louisiana legislature ever intended this arbitrary and reason-less rule we deduce from its sensible enactments.) As construed by the majority, however, the enactments may raise serious questions of constitutionality, if Levy's rationale is valid and applicable here.
The writer therefore respectfully dissents.
NOTES
[1] We observe that this exception is sustained as to Ruffin George only. So far as the record shows, the intervention by Highlands Insurance Company, the workmen's compensation insurer, for recovery of benefits paid is still pending in the district court and is not before us. See C.C.P. Art. 1039, (1960); Thomas v. Matthews Lumber Co., La., 215 So.2d 832 (1968); Board of Commissioners of Port of New Orleans v. City of New Orleans, 223 La. 199, 65 So.2d 313; LSA-R.S. 23:1101.
[1] This would pose problems in inheritance situations which might indicate the first solution to be the better, by which the normal presumption of fatherhood is displaced by legitimization by the second marriage. Again, the presumption might be applied in favor of the child, but not necessarily in favor of a father attempting to inherit from him. In tortfeasor situations, the circumstances that there are two fathers is legally irrelevant, just as when a decedent is the father of ten children instead of none. The tortfeasor takes the victim as he finds him. Besides, it is doubtful that a surviving parent who is only technically a father could prove damages of consequence. Here, of course, Willie Jackson never sued for the death of a child he may not have known of.
[2] This case, however, involved litigation between heirs as to inheritance, rather than (as here) a contest permitting a stranger to invoke the presumption to escape liability for a tort.