413 F.2d 509
 Patricia Lebouef MURPHY, as administrarix of the Estate of
Edward Fontenot, deceased, Etc., Plaintiff-Appellee,
v.
HOUMA WELL SERVICE et al., Defendants, v. Eva C. FONTENOT,
Intervenor-Appellant.
 No. 26902 Summary Calendar.
 United States Court of Appeals Fifth Circuit.
 June 18, 1969.
 
 Daniel J. McGee, Mamou, La., Preston N. Aucoin, Ville Platte, La., for appellant.
 Patrick A. Juneau, Jr., Lafayette, La., Isom J. Guillory, Jr., Aaron Frank McGee, Guillory, Guillory & Guillory, Eunice, La., for appellee.
 ON PETITION FOR REHEARING
 Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 By petition for rehearing, Intervenor-Appellant, Mrs. Eva C. Fontenot, seeks reconsideration of our original decision (a) that the Federal Court should look to state law in determining who is a 'child' for purposes of the Jones Act, and (b) that the minor child involved was a 'child' of the decedent under Louisiana law and therefore the sole statutory beneficiary in this Jones Act claim.[1] Despite counsel's vigorous attack on these points, we adhere to our original position.[2]
 
 
 2
 After losing on the original merits, counsel contends on this petition for rehearing that the presumption of legitimacy, as here applied, is violative of the due process and equal protection clauses of the Fourteenth Amendment. Having carefully considered this argument, we find it to be without merit and reaffirm our earlier holding.
 
 
 3
 As background for discussion of the constitutional question urged, portions of our original opinion bear repeating:
 
 
 4
 'Since state law is determinative, the question now becomes the status of the minor child under Louisiana law. Under the Louisiana Civil Code, the husband of the mother is presumed to be the father of all children conceived by her during the marriage. La.Civ.Code Art. 184. The Louisiana Supreme Court has described this presumption as the 'strongest presumption known in the law'. Feazel v. Feazel, 1952, 222 La. 113, 62 So.2d 119. Therefore, Romona Gail is presumed to be the lawful child of Edward Fontenot in spite of all the asserted physical evidence to the contrary.
 
 
 5
 As the presumption of legitimacy is clearly applicable here, we come, then, to the question of determining its conclusiveness on the parties before the Court. The Civil Code provides generally that in cases in which the presumption is subject to attack, the presumed father, if he intends to dispute legitimacy, must institute an action to disavow paternity (en desaveu) within a prescribed period after the child is born or after he discovers its existence.[20] Likewise, if the husband 20. Art. 191. Time limit for disavowal by husband
 
 
 6
 Art. 191. In all the cases above enumerated, where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time, or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child. dies without having disputed legitimacy, his heirs are given a short time to make objection to the status of the child.[21] In the instant case, however, 21. Art. 192. Time limit for disavowal by heirs of husband
 
 
 7
 Art. 192. If the husband die without having made such objection, but before the expiration of the time directed by law, two months shall be granted to his heirs to contest the legitimacy of the child, to be counted from the time when the said child has taken possession of the estate of the husband, or when the heirs shall have been disturbed by child, in their possession thereof. neither Edward Fontenot nor his mother resorted to the procedure afforded by statute.
 
 
 8
 Throughout a long line of decisions the Louisiana Courts have applied these statutory provisions stringently. It is now beyond dispute that if the husband fails to bring a statutory action to disavow, the right to challenge the legitimacy of the children born during marriage becomes extinct. E.g., Evans v. Roberson, 1933, 176 La. 280, 145 So. 539. Likewise, a Louisiana Court of Appeal has stated, '* * * as against the heirs of a deceased, where no action to disavow paternity was brought by the deceased during his lifetime nor by the heirs during the two months following the death, the presumption of paternity becomes conclusive.' Jenkins v. Aetna Cas. & Sur. Co., La.App., 1935, 158 So. 217, 219 (holding that third persons, too, are bound by the presumption). Accordingly, since neither Edward Fontenot nor his mother (and heir), Mrs. Eva Fontenot, instituted the requisite statutory procedures, under state law Romona Gail is conclusively presumed to be the child of Edward Fontenot. As his child, she is the statutory beneficiary under the Jones Act and is entitled to whatever recovery might be had for his death.'
 
 
 9
 Counsel argues strenuously that the application of the presumption denies Mrs. Fontenot due process and equal protection of the laws by preventing her from showing the true 'biological fact' and thereby depriving her of 'basic and crucial rights which are otherwise indisputable.' Apparently, the contention is also made that the intervenor is denied a hearing on the merits 'by conceding the biological and sole dependency facts.'
 
 
 10
 The answer to the second contention is not difficult. In the first place, Mrs. Fontenot is denied the right to show the true 'biological fact' in this hearing only because the Court has ruled that this proof would have no effect on the outcome. That is, if all the intervenor alleges is assumed to be true and the Court holds that she still must lose, she certainly has lost nothing when the Court declines to let her go through the senseless act of proving such allegations. Due process does not mean that a Court must sit to listen to facts that the law treats as having no legal significance.
 
 
 11
 Next, and more fundamentally, we are not here faced with the question whether Louisiana might constitutionally make the legitimacy presumption irrebutable in every case. Louisiana has not done so.[3] On the contrary, Louisiana has provided the intervenor with the vehicle for challenging the presumption and proving the true 'biological fact'. This vehicle is the action to disavow, and, as we noted in our original opinion, the deceased and Mrs. Fontenot simply failed to avail themselves of this mechanism.[4]
 
 
 12
 Mrs. Fontenot relies heavily on recent Supreme Court decisions in Levy v. Louisiana, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, and Glona v. American Guarantee & Liability Ins. Co., 1968, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441. Levy involved the Louisiana wrongful death statute, which the Louisiana Courts had construed to deny to illegitimate children the right to recover for the wrongful death of their natural mothers. The decision, based on equal protection grounds, thus makes it unlawful to discriminate against a person of illegitimate birth in relationship with his mother because no rational legislative purpose supports such discrimination.
 
 
 13
 In contrast, the instant case does not involve a situation in which a certain class of persons is categorically set apart from the whole and given different treatment. Rather, Louisiana has provided only that all children born during wedlock shall occupy a certain legal relationship with their mother's husband, unless the husband or his heirs take certain prescribed legal actions to alter that relationship.
 
 
 14
 Since we concluded on element (a) that Congress meant to look to the state law for the meaning of 'child,' the underlying policies of Louisiana are certainly pertinent. In this light Louisiana undoubtedly has an interest in protecting the intimate family relationship from divisive and destructive attacks by those seeking to challenge the legitimacy of children born during wedlock. As one respected commentator in this field has stated:
 
 
 15
 'The propriety of the state's interest in the family therefore is beyond question, and state legislation fairly designed to encourage the stability of the family must go unchallenged.'[5]
 
 
 16
 The presumption of legitimacy is without question reasonably related to the encouragement of family stability and is especially suited for the 'protection of children otherwise helpless against attempts to deny their legitimacy.' George v. Bertrand, La.Ct.App., 1969, 217 So.2d 47, 50 (dissenting opinion). Likewise, Louisiana's decision to limit the vulnerability of the presumption to certain specified circumstances is related to the same legitimate objectives.[6]
 
 
 17
 It is easy, but too doctrinaire, to say that in every death case, state or federal, land-based, maritime, or amphibious, it is a denial of constitutional rights not to permit inquiry into the biological history and ancestry of everyone making a monetary claim out of the decedent's death. Society-- American society, indeed American constitutional society-- is committed to the existence of some institutions, the stability of which is deemed essential for a healthy existence as a nation. The home-family is such an institution. Inquiry in every death damage suit into areas so private as to command constitutional protection, see Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, in the hopes of proving unlawful or immoral conduct by one of the parents to cast doubt on the legitimacy of one or more offspring presents a substantial basis for a substantial concern by the state.
 
 
 18
 It is one thing to hold, as did Levy, that a state may not constitutionally prohibit recovery by an illegitimate child where the defense was the status of the claimant, not a competing claim by a rival claimant. It is quite another to say that where competition arises between statutory beneficiaries the Constitution compels full inquiry into biological facts in disregard of settled policies which uphold family-home against the perils of illegitimizing frequently innocent, nearly always defenseless minors at the hands of unrelated contestants for the spoils of a death claim.
 
 
 19
 Rehearing denied.
 
 
 
 [1]
 The facts of this case are chronicled and the Court's reasoning set forth in our original opinion, which is reported at 409 F.2d 804
 
 
 [2]
 Since the date of our original opinion, we have actually been fortified in our decision on issue (b). The Louisiana Courts have demonstrated how stringently they view and apply the statutory presumption of legitimacy-- the presumption involved in issue (b)-- even when the results engendered by its application may appear contrary to 'common sense.' See George v. Bertrand, La.Ct.App., 1969, 217 So.2d 47, writ refused, 253 La. 647, 219 So.2d 177. Thus our interpretation of Louisiana law has been confirmed
 
 
 [3]
 We note, however, that other states apparently have stronger, if not conclusive, presumptions with respect to the legitimacy of children born during wedlock. See Krause, Equal Protection for the Illegitimate, 65 Mich.L.Rev. 477, 491 n. 58 (1967); Krause, Bringing the Bastard into the Great Society-- A Proposed Uniform Act on Legitimacy, 44 Texas L.Rev. 829, 844 nn. 29-31 and accompanying text (1966)
 
 
 [4]
 It is significant that the Intervenor here cannot contend that she is denied due process because she has lost rights on the basis of a condition over which she had no control and which she was powerless to correct. Cf. Krause, Legitimate and Illegitimate Offspring Of Levy v. Louisiana-- first Decisions on Equal Protection and Paternity, 36 Chi.L.Rev. 338, 347 n. 34 (1969); Krause, Equal Protection for the Illegitimate, 65 Mich.L.Rev. 477, 492 n. 60 (1967); Brief for Appellant, at 20-2, Levy v. Louisiana, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436
 
 
 [5]
 Krause, Equal Protection for the Illegitimate, 65 Mich.L.Rev. 477, 492 (1967)
 
 
 [6]
 Intervenor's reliance on the Glona decision is also misplaced. In Glona the Court held that it was a denial of equal protection to deny a natural mother the right to recover for the death of her illegitimate child, because there was no rational basis connecting that rule with the legitimate state purpose advanced in justification. Here, as we have stated, the presumption challenged is clearly related to the state's objective