COVINGTON, Judge.
Plaintiffs appeal from the judgment of the trial court which dismissed their suit at their cost.
Our learned brother below gave excellent comprehensive Written Reasons for Judgment, the pertinent portions of which we adopt as our own:
“This is an action to set aside a judgment of possession. It arises out of the following circumstances. On September 4, 1973, Mrs. Josie Morrison Mitchell died. Mrs. Mitchell left no descendants and was survived by two of her sisters, Mrs. Annie B. Penny Griffin and Mrs. Elvina L. McGee, who are defendants in this matter. The defendants filed a petition for possession of the estate of Mrs. Mitchell. The petition alleges that the defendants are the sole surviving heirs of Mrs. Mitchell. After the appropriate formalities were met, this court rendered a judgment of possession dated November 30, 1973, under which the defendants were each awarded an undivided one-half ownership of all the property of the deceased Mrs. Mitchell.
“On January 25, 1974, a petition to set aside the aforementioned judgment of possession was filed in this court by Eddie Morrison, Jr., Mrs. Annie Bell Morrison Knighten, Preston Eugene Morrison and Mrs. Billie Mae Morrison Neal (hereafter called plaintiffs). The petition alleges that the plaintiffs are the legitimate children of Mrs. Mitchell’s predeceased brother, Eddie Morrison, and are therefore entitled to represent their father in the succession of Mrs. Mitchell. The petition further alleges that in addition to the property listed in the deceased’s succession, Mrs. Mitchell also owned a one-fourth interest in Lot 6, Square 18, of North Baton Rouge Subdivision.
“Based on the above allegations, plaintiffs seek the following relief:
(a) To have the judgment of possession of November 30, 1973, recalled and set aside.
(b) To be recognized as heirs of Mrs. Mitchell and to be sent into possession of one-third of all the property left by the deceased.
(c) To have Mrs. Griffin and Mrs. McGee (defendants in this matter) account for and deliver to plaintiffs their fractional interest in any personal property of Mrs. Mitchell’s estate which was converted to their personal use.
(d) To have the property of Mrs. Mitchell’s estate partitioned according to law.
“The defendants have denied the claims of plaintiffs and the matter came to trial on September 23, 1974.”
>)c sfe ‡ %
“Defendants claim that the plaintiffs are not the legitimate or legitimated children of Eddie Morrison, Sr., inasmuch as their mother, Mrs. Mamie Morrison, was married to one Charles Connor at the time of the respective births of the plaintiffs. The defendants submit that inasmuch as the law presumes the husband of the mother to be the father of the children, the plaintiffs must be considered to be the legitimate children of Charles Connor and cannot coincidentally be considered the legitimate or legitimated children of Eddie *132 Morrison, Sr. Because of the legal presumption that the plaintiffs are the legitimate children of their mother’s husband, defendants argue that the plaintiffs cannot represent Eddie Robinson, Sr., whom plaintiffs claim as their father. In support of their position, the defendants cite Civil Code Art. 184 and the cases of Succession of Barlow, [La.App.,] 197 So.2d 682 (1967) and George v. Bertrand, [La.App.,] 217 So.2d 47 (1969).”
‡ *
“The plaintiffs submit that under the circumstances herein, the presumption of Civil Code Art. 184 does not apply and the cases of Succession of Barlow and George v. Bertrand, cited supra, are distinguishable from the instant situation. Further, plaintiffs allege that to deny to plaintiffs the right to inherit as representatives of their natural father would be to violate their constitutionally guaranteed rights to due process and equal protection of the law.”
jfi íjí % ‡
“The established facts are as follows:
(a) The mother of the plaintiffs, Mrs. Mamie Morrison (nee Mamie Thomas) was married to Charles Connor on April 3, 1926, and was divorced from him on October 28, 1941 (see plaintiffs’ exhibit 1).
(b) Eddie Morrison was married to Mattie Peterson on March 5, 1919, and divorced from her on February 12, 1932 (see plaintiffs’ exhibit 9).
(c) Eddie Morrison and plaintiffs’ mother, Mrs. Mamie Morrison, were married to each other on November 12, 1941 (see plaintiffs’ exhibit 2).
(d) The plaintiffs were born during the years 1932 to 1937, which is prior to Mrs. Morrison’s divorce from Charles Connor (see plaintiffs’ exhibits 5, 6 and 7).
“Mrs. Mamie Morrison testified that she left her first husband, Charles Connor, some six months after her 1926 marriage to him. One son, Charles, was born of this marriage. However, the child was born after Mrs. Morrison had separated from her first husband. Mrs. Morrison stated that she has not seen Mr. Connor since 1926 and does not know his whereabouts or whether he is alive. She heard that he went to Chicago when he left in 1926. Mrs. Morrison also related that in 1932 she began living with her future husband, Eddie Morrison, Sr. At first, the couple lived at the house of Mrs. Morrison’s mother. Two children, Barbara (not a plaintiff herein) and Eddie, Jr., were born there. Eventually, in 1939, Eddie Morrison, Sr., and his common law wife built a house together. Mrs. Morrison stated that the natural father of all her children (except Charles) was Eddie Morrison, Sr., and that she and Eddie Morrison never separated from 1932 until Mr. Morrison’s death in 1967. Mrs. Morrison further testified that Eddie Morrison acknowledged the children as his own, supported them, educated them (all are college graduates), and gave the daughters away on their wedding day. The birth certificates (plaintiffs’ exhibits S, 6 and 7) of three of the plaintiffs (Annie Bell’s birth certificate was missing) as well as the birth certificate of Barbara (plaintiffs’ exhibit 4) show Eddie Morrison as the father of the children. Mrs. Morrison also testified that in 1941, on advice from a lawyer, she obtained a divorce from Charles Con-nor and formally married Eddie Morrison, Sr. Her 1941 marriage to Eddie Morrison, Sr., is evidenced by their marriage certificate (plaintiffs’ exhibit 2).
“Mrs. Morrison’s son, Eddie Morrison, Jr., a plaintiff herein, was also a witness. He testified that he knew only Eddie Morrison, Sr., as his father and that he knew the defendants as his aunts. He also stated that he always considered himself as the legitimate son of Eddie Morrison, Sr., and it was not until Mrs. Mitchell died that he was made aware of the marital status of his parents at the time of his birth.
*133 “The defendants, for their part, did not contradict the testimony of Mrs. Morrison and Eddie Morrison, Jr. However, Mrs. Griffin did state that there was only ‘hearsay’ that Eddie Morrison was the natural father of the plaintiffs. Mrs. Griffin did admit that until adulthood, the plaintiffs were reared and supported by her brother, Eddie Morrison, Sr.
“The court also notes that the defendant, Mrs. McGee, testified that she retained a lawyer after the plaintiffs (and Barbara Morrison Harrell) were permitted to inherit as representatives of their father in the Succession of another sister, Delline Morrison Stallard. It is noteworthy that the petition for possession in the Succession of Delline Morrison Stallard (Plaintiffs’ exhibit 8) is accompanied by an affidavit of death and heirship which contains a sworn statement by two witnesses to the effect that the plaintiffs herein are the children of Eddie Morrison, Sr. The plaintiffs pointed out at trial and in brief that the defendants, who are also listed as heirs of Mrs. Stallard on the above-mentioned affidavit, did not complain or challenge the plaintiffs’ right to inherit their father’s share of Mrs. Stallard’s estate.
;fí :fi i{c ‡ ‡
“The Court has no doubt that Eddie Morrison, Sr., is the biological father of the plaintiffs in this matter. All the evidence and testimony support this conclusion and it is not seriously denied, as indeed it cannot be.”

“ . . . this court must hold that because the plaintiffs’ mother was married to an absentee, Charles Connor, at the time the plaintiffs were born, they are the legitimate children of Charles Connor and because of their legitimate status, cannot be legitimated by the subsequent marriage of their biological father to their mother. In short, our law considers plaintiffs to be the legitimate children of the long-lost Charles Connor. Therefore, they cannot inherit as representatives of their natural father, Eddie Morrison, Sr.”
* * ifc * * *
“ . . . Succession of Barlow and George v. Bertrand, cited supra. These cases interpret Article 184 of our Civil Code which reads as follows:
‘The law considers the husband of the mother as the father of all children conceived during the marriage.’
“This article sets up the presumption that the husband of the mother is the father of the children born of the marriage. This presumption of law is, in principle, altogether commendable and has as its main purpose to prevent children from being denied legitimate status by a father who would disclaim parentage. However, the above-cited jurisprudence is clearly to the effect that unless the legal husband disavows the children, they are considered as the legitimate children of the legal husband and therefore cannot be viewed as the legitimated children of their biological father upon his subsequent marriage to the children’s^ mother . . . ”
“This jurisprudence is also to the effect that the presumption of Civil Code Art. 184 may be invoked by a third person, who is a stranger to the marriage, for the benefit of the third person . . . ”
“The court considers itself bound by this jurisprudence and therefore . . . holds that the defendants-aunts herein are entitled to invoke the presumption that the husband of the mother is the father of the children which implies that because Charles Connor was the legal husband of Mrs. Morrison at the time of the births of the plaintiffs herein, the plaintiffs are legally viewed as the legitimate children of Charles Con-nor. As such they cannot be the legitimated children of Eddie Morrison, Sr., and therefore cannot inherit from their aunts as representatives of their father.
“The court has considered plaintiffs’ argument that the cases of Succession of Bar *134 low and George v. Bertrand are distinguishable from the instant matter. The court admits that the factual situations in these two cases are not precisely the same as the situation herein; however, the court is not of the opinion that the factual distinctions between this matter and the Barlow and George cases necessitate a different result. It is felt that the law as set forth in those cases is clear and . applicable herein.
“The plaintiffs also argue that the court’s holding herein constitutes a denial of plaintiffs’ constitutionally protected rights to due process and equal protection of the law. Plaintiffs cite the 1968 landmark case of Levy v. Louisiana, 39 [391] U.S. 68, 88 S.Ct. 1509, [20 L.Ed.2d 436.] This case held that the equal proection clause of the 14th Amendment to the United States Constitution prohibits an interpretation of Civil Code Article 2315 by which an illegitimate child would be denied the right to recover for the wrongful death of his parent. The Levy rationale would indeed make the court’s ruling herein constitutionally suspect were it not for the 1971 U. S. Supreme Court case of Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, [28 L.Ed.2d 288] which held that Levy did not prohibit discrimination between acknowledged illegitimate children and legitimate children in Louisiana succession law. Because of the Labine case, the court must reject plaintiffs’ claim that their constitutional rights have been denied.
“The court is aware of the case of Warren v. Richard, [La.,] 296 So.2d 813 (1974) ... In Warren the Louisiana Supreme Court extended the doctrine of Levy and its progeny by holding that an illegitimate child could recover for the wrongful death of her biological father even though the child was, by presumption of law, the legitimate child of her mother’s husband. In speaking of wrongful death actions, the Supreme Court made the following remark:
‘As we understand the rationale of the decisions of the United States Supreme Court, it is the biological relationship and dependence which is determinative of the child’s rights in these cases, and not the classification into which the child is placed by the statutory law of the State.’
* * * * * *
“Finally, plaintiffs submit that because the defendants did not complain of plaintiffs’ status in the Succession of Stal-lard (where plaintiffs were permitted to inherit from their deceased aunt as representatives of their biological father), the defendants should be estopped to complain now. The court cannot agree with this contention, inasmuch as the defendants cannot be estopped to claim legal rights of which they were apparently ignorant at the time of the Stallard succession. See Succession of Valdez, [La.App.,] 44 So.2d 151 and Christen v. Coulon, [La.App.,] 94 So.2d 47.”
Accordingly, the judgment of the lower court is affirmed, all cost to be paid by appellants.
Affirmed.