323 So.2d 451 (1975)
Succession of Mrs. Josie M. MITCHELL.
Josie M. MITCHELL.
Eddie MORRISON, Jr., et al., Plaintiffs-Appellants-Relators,
v.
Mrs. Annie B. Penny GRIFFIN et al., Defendants-Appellees-Respondents.
No. 56466.
Supreme Court of Louisiana.
December 8, 1975.
*452 Vanue B. Lacour, Lacour & Calloway, Baton Rouge, for plaintiffs-appellants-relators.
Samuel Dickens, Baton Rouge, for defendants-appellees-respondents.
TATE, Justice.
The central issue involves whether children, otherwise entitled to be legitimated by the marriage of their parents after their birth, Civil Code Article 198, are nevertheless deprived of this right because of their mother's prior marriage years earlier to a man who disappeared shortly afterwards.
The district and intermediate courts rejected the claim of the children that they were legitimated by the marriage of their parents. These courts did so, because at the time of their births (some years after the first husband had disappeared) the mother's prior marriage had not been dissolved, so therefore the first husband was presumed to be their legal father, Civil Code Article 184. 312 So.2d 130 (La.App. 1st Cir. 1975). These courts did so in reliance upon George v. Bertrand, 217 So.2d 47 (La.App.3d Cir. 1968), certiorari denied 253 La. 647, 219 So.2d 177 (La.1969) and Succession of Barlow, 197 So.2d 682 (La. App. 4th Cir. 1967), certiorari denied 250 La. 917, 199 So.2d 921 (1967).
We granted certiorari, 314 So.2d 735 (1975), to consider the correctness of the cited intermediate decisions in George and Barlow, as well as because, under the facts shown, such holding seemed inconsistent with the reasoning of this court in Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
The Facts
The undisputed facts show:
The plaintiffs, Eddie Morrison, Jr., et al., are the biological children of Eddie Morrison, Sr. and Mamie Thomas. The parents have lived together since 1930, although they were not formally married until 1941.
The children were born between 1931 and 1937. At the time of their births, they were registered under their Morrison surname as the children of Eddie, Sr. and Mamie Thomas.
The children were held out and known all their lives as the children of Eddie and Mamie. Eddie, Sr., raised them as their father, educated them (they all received college educations), and lived with them and their mother in their family home until his death in 1967.
This controversy arises in the succession of Eddie, Sr.'s sister, Josie Morrison Mitchell. She died without ascendants or descendants; therefore, her brothers and sisters and their descendants are her legal heirs. Civil Code Article 912. His children claim their predeceased's father's share of the estate by representation. Civil Code Articles 897, 898.[1]
The decedent's two surviving sisters[2] obtained an ex parte judgment of possession to recognize them as her legal heirs. The plaintiffs nephews and nieces sue to set aside such judgment insofar as it failed to recognize them as heirs.
Mamie Thomas, the plaintiff's mother, was married to Charles Connor in 1926. Shortly after the marriage, Connor went to Chicago, Illinois. Mamie has never seen Connor since, nor did any of the witnesses know of his whereabouts for many years, nor even if he were still alive.
The children of Mamie and Eddie Morrison, Sr. had never even met Charles Connor. He had never been considered their father; they had been raised as Eddie Morrison, Sr.'s children and considered so by the community in which they lived.
*453 In 1941, when Mamie and Eddie Morrison, Sr., desired to formalize their relationship by marriage, they went to a lawyer. They told him that they did not know the whereabouts of Connor, although they had heard he was dead.
To avoid the possibility of a bigamous marriage, the lawyer advised them that Mamie should secure a divorce. An attorney was appointed to represent the absentee husband, and he endeavored to communicate with Connor at his last known address in Chicago. The letter was returned.
A divorce was granted Mamie from her first husband on the ground of the voluntary separation of many years. A few days later, Mamie and Eddie Morrison, Sr., were formally married.
Charles Connor as the Children's Father: Civil Code Article 184.
The district and intermediate courts held that the biological children of Mamie and Eddie Morrison, Sr. were not legitimated by the subsequent marriage of their parents, as normally results from the subsequent marriage of the parents of children born previous to it. Civil Code Article 198 (to be quoted below). This holding was based upon the previously cited George and Barlow decisions of the intermediate courts.
These decisions held that, since the children were already by law the issue of the 1926 marriage between Charles Connor and Mamie Thomas by reason of Civil Code Article 184, they could not be legitimated issue of the second union.
Article 184 provides: "The law considers the husband of the mother as the father of all children conceived during the marriage." Under the jurisprudence interpreting this article, a child born during a lawful marriage is conclusively presumed to be an issue of the marriage"the husband of the mother is presumed to be the father of her children", unless within a short statutory period an action is successfully brought by the father or his heirs to disavow its legitimacy on the narrowly limited grounds permitted.
See: Civil Code Articles 191, 192; Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 (1972); Williams v. Williams, 230 La. 1, 87 So.2d 707 (1956); Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952); Kuhlman v. Kuhlman, 137 La. 263, 68 So. 604 (1915); Succession of Saloy, 44 La. Ann. 433, 10 So. 872 (1892).
The husband is accorded six months from the birth of the child to file the disavowal action, if he be in the parish where it is born. Article 191. The code provision further provides that, if the husband be absent at the time of the child's birth, he must file the disavowal action "within six months after his return." (Further, if the husband dies before the expiration of the delay so provided, the heirs are given a six-month period within which to contest the child's legitimacy. Article 192.)
Charles Connor had disappeared from Louisiana in 1926. There is no evidence where he is or even if he was alive at the time the children were born or is now alive. Nevertheless, the trial court felt obliged under the George and Barlow, the cited intermediate court opinions, to recognize him as the children's legal father.
The trial court noted: "This illogical holding is required by the jurisprudence.... Notwithstanding the obvious fact of Eddie Morrison, Sr.'s paternity, his acknowledgement thereof, and his subsequent marriage to his children's mother, the law has made it impossible for this trial court to do what justice and common sense demand; that is, to hold that the plaintiffs are privileged to inherit from their aunt as respresentatives of their father. Rather, this court must hold that because the plaintiffs' mother was married to an absentee, Charles Connor, at the time the plaintiffs were born, they are the legitimate children of Charles Connor and because of their legitimate status, cannot be *454 legitimated by the subsequent marriage of their biological father to their mother."
Charles Connor's Still-Existing Right of Disavowal: Civil Code Articles 191, 192.
The evidence does not negative an existing right in Charles Connor (if he is alive and if he returns to East Baton Rouge Parish) or his legal heirs to disavow the plaintiff children as his legitimate issue.
Charles Connor left the parish in 1926 and has never returned. The children were born during 1931 to 1937, during his absence. The evidence does not indicate he ever knew of their births.
If Connor is alive and returns (and certainly if he did not know until then of the children's birth), he may still disavow them as his legitimate issue, providing he does so within six months of his return. Civil Code Article 191 (as amended in 1968). If he is already dead, or if he is now alive and subsequently dies, his legal heirs are given the right to question the children's legitimacy within six months after they claim his estate, if any. Civil Code Article 192 (as amended in 1968).
In either event, the present children's legitimacy as children of Connor can later be successfully attacked. Thus, this court should not fix now the status of the children as irrevocably Connor's legitimate issue, when in fact their legitimacy is open to question. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972) (a decision apparently not called to the attention of the trial court).
In Babineaux, a child was born shortly after a second marriage. The issue concerned his right to sue for the wrongful death of his biological father, the second husband. The lower courts had dismissed his claim, holding that (since conceived during an undissolved first marriage, Article 182), the child was the legitimate issue of the mother's first husband. We reversed, pointing out, 262 So.2d 335-38, that the first husband still had the right to disavow the child and that the lower courts were therefore in error in making the first husband's presumed paternity under Civil Code Article 184 an unrebuttable presumptionwhen, in fact, it was still rebuttable.
If only because required by Babineaux, we must for similar reasons reverse. We prefer to rest our decision, however, on the application of Civil Code Article 198 to the present facts.[3]
Legitimation by Marriage of Parents: Civil Code Article 198.
Article 198 now provides: "Children born out of marriage, except those who are born from an incestuous connection, are legitimated by the subsequent marriage of their father and mother, whenever the latter have formally or informally acknowledged them for their children, either before or after the marriage."
As originally enacted by the Civil Code of 1808, it provided (almost verbatim to French Civil Code Article 331) that children born out of marriage, "except those who are born from an incestuous or adulterous connection", "may be" legitimated by the subsequent marriage of their parents, "whenever the latter have legally acknowledged them for their children, either before their marriage or by their contract of marriage itself." Civil Code of 1808, p. 48, Article 21. (Italics ours; subsequent legislative amendments removed these requirements.[4]
*455 The article, as re-enacted in the Codes of 1825 (Art. 217) and the Code of 1870 (Art. 198), was amended by Act 50 of 1944. This amendment made legitimation by the subsequent marriage automatic ("are legitimated") by the acknowledgement at any time, either before or after the marriage, "whenever the [parents] have formally [as before] or informally [new] acknowledged them for their children." Pertinently, the article was further amended by Act 482 of 1948 so as expressly to remove the bar to legitimation of children born of an adulterous connection.
Thus, the legislative history of amendment to the code article indicates an express legislative intent to permit the legitimation of adulterous children by the subsequent marriage of their parents. This 1948 amendment was the latest of a series of legislative amendments favoring automatic legitimation by the subsequent marriage of their parents of children born outside of a marriage between them but admitted to be their biological children.
We should note that both Article 184 (the presumption of the husband's paternity of children conceived during the marriage) and Article 198, as originally enacted by our 1808, 1825, and 1870 codes, were virtually verbatim translations of Articles 312 and 331 of the French Civil Code. By a series of judicial interpretations and legislative amendments, the French have also modified these articles so that, in France, under certain circumstances an adulterous child of a wife may be legitimated by her subsequent marriage to its biological father, even though the child is not disavowed by its mother's former husband (its presumed father, since conceived during the former marriage). Planiol, Civil Law Treatise, Volume, Sections 1418, 1553 (LSLI translation, 1959).
In our opinionespecially in view of the series of prior broadening amendments requiring automatic legitimation by the marriage of the biological parents of children born out of wedlock, the clear legislative intent of the 1948 amendment of Article 198 was to permit the subsequent marriage of the parents to legitimate all children (except incestuous) born of them before their marriage, including those who were adulterous.
Adulterous children, within this code sense, are indicated by Article 182 to be those conceived at a time when either their father or mother were married to someone else. This is the only classification of children in the code referring to adulterous issue.
The definition by this Article 182 is found within a section of the 1870 code defining illegitimate children. However, the broad legislative intent reflected by the 1948 amendment is to require automatic legitimation of adulterous children by the subsequent marriage of their biological parents. This broad intent does not, it seems to us, authorize a judicial narrowing of the Article's application so as to include legitimation only of those adulterous children (a) whose mothers were unmarried at the time of conception or (b) who, if their mothers were married to someone else at the time of their conception, were technically as well as actually illegitimate issue of the first marriage because of the happenstance of her first husband's timely disavowal (a rare occurrence, the jurisprudence reflects).
As Planiol noted, ascribing the reasons for the similar broadening in France of legitimation by marriage: "Legitimation has an incontestable moral influence. It induces the transformation of irregular households into legitimate families * * *." Id., Section 1551, p. 858. See also Oppenheim, One Hundred Fifty Years of Succession Law, 33 Tul.L.Rev. 43, 53 (1958). The Louisiana legislative amendments, like the French legislation and judicial interpretations, reflect an attempt to have legal parenthood coincide with biological parenthood, at least where the parents *456 establish a legal family entity through the civil relationship created by the marriage of the father and the mother.
We are unable to find any reason for any legislative intent to limit the benefits of legitimation by the marriage of the parents to some adulterous children (those born of a single woman and a married man) and not to others (those born of a married woman, either by a single or a married man), or to make legitimation by the marriage depend on the happenstance whether, at the time the legitimated status is contested, the mother's first husband has timely disavowed the adulterous children as his legal issue.
Thus, in the present instance, the marriage of Eddie Morrison, Sr., and of Mamie Thomas legitimated their children by the express terms of Article 198, despite the circumstance that they may have been born of an adulterous connection if Mamie Thomas was at the time of their conception still married to another man (assuming he was still alive).
The Decisions in George and Barlow
In the present case, the district court and the court of appeal felt bound by the prior intermediate court decisions in George and Barlow, cited above, which reached a contrary result. They have been uniformly criticized for their inflexible, unrealistic, and unjust application of the presumption of paternity to one born during an undissolved marriage, where the mates have long been living separate and apart and the mother has been living in stable union with another, who is the actual biological father of the children. Pascal, Louisiana Succession and Related Laws and the Illegitimate, 46 Tul.L.Rev. 180 (1971); Tete, Work of the Louisiana Appellate CourtsPersons, 30 La.L.Rev. 171 (1969); Pascal, Work of the Louisiana Appellate CourtsPersons, 28 La.L. Rev. 316 (1968); Note, 16 Loyola L.Rev. 235 (1969).
We do not at this time reach the criticism of the inflexible presumption of paternity voiced by these scholarly critics. We think it sufficient to note our disagreement with the interpretation by George and Barlow of the application of Article 198 to the present circumstance.
These decisions were based on the scheme of definitions represented by the Civil Code of 1870:
"Children are either legitimate, illegitimate, or legitimated." Article 178. "Illegitimate children are those born out of marriage. Illegitimate children may be legitimated in certain cases, in the manner prescribed by law." Article 180.
Since due to the presumed paternity of the husband of the mother, Article 184, the children were presumed to be legitimate issue of the undissolved marriage, the George and Barlow decisions reasoned that the children were not born "out of marriage." Not being illegitimate children, the courts held that they could not be legitimated by the marriage of their parents, Article 198. The courts in effect held that the children could not be born "legitimate" as to the first marriage and "legitimated" by the second marriage.
This reasoning, however, overlooks the 1948 amendment's express removal of the bar to legitimation of adulterous children by the marriage of their parents. As originally enacted in the 1870 code, illegitimates who were adulterous could not be legitimated by the marriage of their parents. Article 198. The definitions relied upon by George and Bertrand had to be understood as applying in their statutory context.
However, by the 1948 amendment of Article 198, adulterous children were to be legitimated by the subsequent marriage of their parents. The earlier statutory language must be re-interpreted as modified in the light of this later legislative amendment *457 and the legislative intent thereby reflected. This intent, we have found, is to permit legitimation by the subsequent marriage of their parents of all adulterous children, whether technically illegitimate or technically legitimate at birth (whether or not subsequently disavowed by a long-separated husband if he returns or discovers his wife has had a child during his absence).
Effect of Legitimation by Second Marriage, Article 198, on Presumption of Legitimacy as Conceived During the First Marriage, Article 184.
What is the effect, if any, of the legitimation by the second marriage upon the children's presumed status as the legitimate children of the first husband?
Is, for instance, the effect of the legitimation by marriage to displace the presumption of paternity of the wife's first husband?[5] But see Dugas v. Henson, 307 So.2d 650 (La.App.3d Cir. 1975), certiorari denied 310 So.2d 851 (La.1975). Or does the legitimation simply create in a second person the legal relationship of father to the now-legitimated child, without displacing any presumed similar legal relationship arising from the first marriage?[6] See: Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328, 338 (1972).
The present facts indicate no substantial possibility that the courts will in fact ever be called upon to decide any practical consequences of the issue concerning the children's continued legitimacy insofar as the long-disappeared Charles Connor. We therefore do not find it appropriate to decide this issue, especially without joinder of Connor as a party to the litigation.
The present litigation involves only whether the children born of Eddie Morrison's (presumed) adulterous connection with Mamie Thomas were legitimated by their subsequent marriage. Article 198, as we have held, through its 1948 amendment requires that such legitimated status be accorded to these children.

Decree
For the reasons assigned, we hold that the plaintiff children are entitled to be recognized as the legitimated children of Eddie Morrison, Sr., and to share by representation of him in the decedent's, their aunt's, estate. We reverse the judgments of the previous courts, and we remand this case to the district court for further proceedings consistent with the views here expressed. All costs of appellate review are cast against the defendants' appellees-respondents All other costs to await final determination of these proceedings.
Reversed and remanded.
NOTES
[1] In fact, their right to do so was recognized without objection in the succession of their father's other deceased sister, Delline, who died in 1972.
[2] Mrs. Annie B. Penny Griffin and Mrs. Elvina L. McGee.
[3] Babineaux concerned a child born during a second marriage (although conceived prior to it). Because the second marriage was bigamous, and because the child there concerned was not born prior to it, we did not there reach the possible application of Civil Code Article 198, which is now urged as applicable under the present circumstances.
[4] See Article 198, La.C.C.Comp.Ed., in 16 West's LSA-C.C. pp. 124-25 (1972) for legislative texts.
[5] According to Planiol, the French courts have held that upon the mother's re-marriage to the children's actual father, the presumption of her first husband's paternity ceases to apply. Planiol, cited above, Section 1418. He also comments that it is "strange" that the children's presumed prior legitimacy and the rights flowing therefrom should entirely depend on the subsequent decision to marry or not of their mother and her paramour.
[6] Analogously, due to overlapping presumptions of legitimacy, a child may be presumed to be the child of two fathers, Civil Code Articles 184-192, 960, and inherit from both if not disavowed timely by either. Brouillette, Presumption of Legitimacy, 13 La.L.Rev. 587, 595-596 (1953). Likewise, an adoptive child may inherit from both his natural and his adoptive father. Article 214. Similarly, a man may simultaneously have the legal relationship of "husband" to two women, a legal wife and a putative wife, with the children of both considered his legitimate issue. Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); see also Cortes v. Fleming, 307 So.2d 611 (La.1974).